718 P.2d 1238

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Kenneth Lee BUZZARD, Defendant-Appellant.**

No. 15894.

Court of Appeals of Idaho.

March 17, 1986.

Petition for Review Denied May 20, 1986.

Anthony M. Sanchez (argued), and Charles B. Lempesis, Post Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Deputy Atty. Gen., (argued), Boise, for plaintiff-respondent.

## SUBSTITUTE OPINION

The Court's prior opinion, dated January 29, 1986, is hereby withdrawn.

WALTERS, Chief Judge.

Kenneth Lee Buzzard was convicted by a jury of second degree murder in the stabbing death of Randy Hayward. Buzzard was sentenced to an indeterminate term of twenty years. On appeal, Buzzard raises several alleged errors that he argues made his trial unfair. First, Buzzard asserts that the trial judge erred in admitting certain testimonial evidence, particularly: (a) testimony concerning an incident shortly before the fatal stabbing when Buzzard had threatened the victim with a machete; and (b) testimony by the victim's mother, identifying the victim. Second, Buzzard argues that certain conduct by the prosecutor was improper, specifically: (a) reference by the prosecutor to Buzzard as "the man with the machete," and (b) knocking over a pitcher of water in the courtroom. Finally, Buzzard urges that the cumulative effect of the above errors was to make his trial unfair. We affirm the judgment of conviction.

The record reveals the following course of events that led to Buzzard's conviction and sentencing for this crime. Buzzard and a friend (Baldino) were driving from Seattle to the east coast. The pair stopped in Coeur d'Alene, Idaho where they met the victim, Randy Hayward, at a bar. After drinking at a couple of bars, the trio stopped at a convenience store to buy more beer. During this stop, Buzzard and Hayward had an argument over money that Buzzard thought Hayward had tried to take from him while they were in the store. Buzzard left the store and obtained a machete from the trunk of his car. As Hayward came out of the store, Buzzard brandished the machete and accused Hayward of

trying to take the money. The argument temporarily subsided and the trio went to a place on the shore of Lake Coeur d'Alene to drink their beer. However, Buzzard and Hayward soon resumed the argument, and the argument led to violence. Hayward apparently kicked Buzzard who, in turn, stabbed Hayward twice with a large knife. Buzzard and Baldino then got into their car and left the scene. Unknown to the trio, a young woman who was sleeping on her family boat near the scene of the stabbing awoke and overheard much of the argument. She testified concerning her observations and related the matters she overheard during the confrontation between Hayward and Buzzard when the stabbing occurred. She stated that when she realized Hayward had been stabbed and the defendant and Baldino were leaving, she awakened her parents and then summoned aid for Hayward. However, Hayward died later in the hospital as a result of the wounds. Buzzard was arrested and charged with the crime. At trial, Buzzard testified he stabbed the victim in self-defense. He was found guilty by a jury of second degree murder.

I

Buzzard's alleged evidentiary errors arose from two separate scenarios. First, prior to trial, Buzzard made a motion in limine to suppress any evidence related to, what can be conveniently called, "the machete incident." Buzzard argued that this was inadmissible evidence of prior misconduct, and that the evidence was more prejudicial than probative. The trial judge granted the suppression motion in part. The judge allowed testimony about the machete incident at the store, but refused to admit either the machete itself or photographs of it. The judge also excluded reference to the "sharpness" of the machete. On appeal, Buzzard argues that even allowing testimony about the machete incident was error because it was unfairly prejudicial. We disagree.

Evidence of other crimes or bad acts is generally not admissible to show the propensity of a defendant for criminal acts. *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979). Evidence of prior bad acts may pose a danger that the jury will find the defendant guilty because he is a bad person, rather than because he is guilty of the offense with which he is charged. *State v. Abel,* 104 Idaho 865, 664 P.2d 772 (1983). However, Idaho recognizes exceptions to this general rule and allows such evidence if it is probative of (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, (5) identity of the accused, and (6) other similar issues. *State v. Needs, supra.* If the trial judge finds the evidence relevant to one of these purposes, he then must weigh the probative value of such evidence against any unfair prejudice it may cause to the defendant. *State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980); *State v. Matthews,* 108 Idaho 482, 700 P.2d 104 (Ct.App.1985). The weighing process is committed to the judge's sound discretion. *Id.*

Here, the evidence of the machete incident was relevant to the defendant's motive and his intent toward the victim. Notably, the machete incident occurred only hours before the stabbing. Our Idaho Supreme Court has upheld, in a murder trial, the admission into evidence of testimony of an attack by a defendant on a victim which occurred two weeks prior to the killing of the victim. *State v. Needs,* 99 Idaho at 893, 591 P.2d at 140. That court likewise noted the relevancy of the testimony as to motive and intent of the defendant. *Id.* We also recognize that the state is entitled to present to the jury a complete account of the circumstances surrounding the commission of a crime. *State v. Izatt,* 96 Idaho 667, 534 P.2d 1107 (1975). The machete incident was the basis of the argument which eventually led to the stabbing of Hayward. The jury would have received an incomplete story had no basis for the argument been established. Further, the

judge balanced the probative value of the evidence with its possible prejudicial effect. His decision not to allow admission of the machete itself or photographs of it excluded the most prejudicial aspects of the evidence, yet permitted the jury to hear a complete and comprehendible story of the events that led to Hayward's death. We conclude that the trial judge did not abuse his discretion in permitting the testimony into evidence.

■ The next evidentiary issue raised by Buzzard concerns the testimony of the victim's mother. Her testimony was used to establish the identity of the victim. Buzzard argues that this testimony was not proper because there was no dispute as to the identity of the victim. He also asserts that the evidence was unduly prejudicial because of the emotional nature of the mother's testimony. As to the identity question, the state has two elements that it must prove in order to show the corpus delecti in homicide cases: (1) the death of the person named in the charge and (2) that the criminal action or means of the defendant caused the victim's death. *State v. Needs,* 99 Idaho at 886, 591 P.2d at 133. Likewise, the state has a duty to prove all the elements of the crime, even if the defendant concedes those elements. *State v. Hatton,* 95 Idaho 856, 522 P.2d 64 (1974). The testimony of the mother as to the identity of the victim was clearly relevant in that it proved one of the elements of the state's case. We note that the trial judge did sustain the defendant's objection to testimony by the mother on matters not related to the victim's identity.

As to Buzzard's challenge to the prejudicial nature of the mother's testimony, the record reflects no indication that her testimony was unduly emotional. A trial judge may, in his discretion, exclude evidence, otherwise admissible, if its unfair prejudicial impact exceeds its probative value. Here, we are not persuaded that the prejudicial impact, if any, of having the mother identify the victim was so great as to show an abuse of discretion.

## II

■ Buzzard's next asserted error concerns certain statements and actions by the prosecutor during trial. When questioning the young woman who had witnessed the fatal incident between Buzzard and Hayward, the prosecutor referred to Buzzard as the "machete man" and "man ... [that] pulled the machete." The prosecutor used these terms because the defense counsel had objected to the witness's use of the men's first names. Defense counsel argued that the witness had no first-hand knowledge of the men's names since she had learned them subsequent to the stabbing. We have already concluded that the trial judge did not err in admitting evidence of the machete incident. The transcript of the trial reveals that these phrases were used only to identify Buzzard as one of the trio of men. There is no indication in the record that the use of the terms was inflammatory. Therefore, we can see no harm in referring to the defendant as "the man with the machete" or "machete man" especially in light of defense counsel's objections to the use of the men's names. We note that at trial the defendant did not object to the use of these terms. If he had, other names could have been substituted.

■ The other alleged misconduct occurred when the prosecutor was cross-examining the defendant. The prosecutor was holding a ruler approximately the same size as the knife Buzzard had used to stab Hayward. As the prosecutor was questioning Buzzard on how the abdominal wound to Hayward occurred, the prosecutor knocked over a water pitcher. The trial was recessed for ten minutes to clean up the spilled water. The defendant contends that the action of the prosecutor in knocking the water pitcher over was a form of "theatrics" calculated to excite and inflame the jury. We are unpersuaded. We do not believe that the spilling of water under these circumstances warrants a finding of error.

We note that the defendant did not object to either of these asserted errors at trial. Failure to object at trial generally acts as a waiver of the error. *State v. Baruth,* 107 Idaho 651, 691 P.2d 1266 (Ct.

App.1984). However, some errors may be so inflammatory that the jury may be influenced to determine guilt on factors outside the evidence. In those situations, no waiver will be presumed. *Id.* However, in this case we conclude that these allegations do not rise to the level of error, much less inflammatory error.

### III

In his final issue on appeal, Buzzard charges that the doctrine of "cumulative error" applies. We have previously held that "an accumulation of irregularities, each of which in itself might be harmless, may in the aggregate show the absence of a fair trial." *State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149 (Ct.App.1983). However, for this doctrine to apply, there must be errors to accumulate. Here we have concluded that no errors existed. Therefore the doctrine is not applicable. The judgment of conviction is affirmed.

BURNETT and SWANSTROM, JJ., concur.