849 P.2d 129

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Karl William LARSEN, Defendant–Appellant.**

No. 19128.

Court of Appeals of Idaho.

March 24, 1993.

Alan E. Trimming, Ada County Public Defender, Amil N. Myshin, Jr., Deputy Public Defender (argued), Boise, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

SILAK, Judge.

Karl William Larsen appeals his convictions for sexual abuse of a child under sixteen, I.C. § 18–1506, and lewd conduct with a minor under sixteen, I.C. § 18–1508. Larsen was sentenced to a determinate sentence of twenty-five years with an indeterminate life sentence for lewd conduct and a concurrent fixed term of fifteen years for sexual abuse. Larsen appeals the judgments of conviction on the basis that he was denied a fair trial required under the due process clauses of the Idaho Constitution and the United States Constitution. Idaho Const. art. I, § 13; U.S. Const. amends. V and XIV. Larsen also appeals the denial of his I.C.R. 35 motion to reduce the sentences, arguing that they are excessive under the circumstances. We affirm.

## FACTS AND PROCEDURE

Larsen sexually abused the victim, an eight-year-old girl, at a trailer park where he lived. Larsen befriended the victim who was a frequent visitor to the trailer park. Larsen took still and video taped pictures of the victim during these visits. Two of the photos show the victim in semi-nude poses; one in her panties only, the other in a dress with her legs bent to her chest exposing her vaginal area. A fellow employee of Larsen's discovered these photos and turned them over to the police. The

photos sparked an investigation which led to Larsen's arrest.

During the investigation the victim was identified and referred to the CARES unit at St. Luke's Regional Medical Center. CARES personnel performed an extensive physical and psychological evaluation. The results of this evaluation led to a grand jury investigation. Larsen was subsequently indicted for violations of I.C. §§ 18–1506 (sexual abuse), –1508 (lewd conduct).

A jury found Larsen guilty on both counts. During the trial the victim—then age nine—testified under special procedures initiated by the trial court. The initial procedure required counsel to ask questions in a conversational tone and to take frequent breaks. Before the victim testified the court instructed the jury that testimony elicited under the procedures was not to be given any more or less weight than normal.

Under the initial period of direct questioning the victim denied any wrongdoing by Larsen. After the first break the procedures were revised by the court. The court added the requirement that counsel was to sit in a chair directly in front of the victim while asking questions. Larsen's objection to the procedures was overruled. Under the new procedures the victim changed her story and testified that Larsen had touched her "privates" with his hand. Defense counsel did not cross examine the victim; she was allowed to step down subject to recall.

The state recalled the victim after the lunch recess and asked whether she remembered being questioned in front of a grand jury. Larsen objected to the use of the grand jury record on the ground that it was "improper." The state advanced the theory that the statements should be admitted as prior inconsistent statements under I.R.E. 801. The court, however, overruled the objection on the ground that it was proper for the state to ask leading questions under the circumstances and specifically dismissed the need for I.R.E. 801. These questions elicited more incriminating testimony from the victim.

Larsen's counsel cross examined the victim inquiring into whether anyone had discussed her testimony with her. The victim denied that she had been coached. Counsel then asked her, "The truth is that Karl never touched you, did he?" to which she replied, "That's a lie." The court questioned the victim after Larsen's counsel finished cross examination. The court asked if she knew why everyone was in court and whether Larsen had done anything to her. The victim replied that everyone was there to find out what happened and that Karl had touched her where she did not want him to.

On redirect the prosecutor asked the victim whether she remembered the truth and she said she did. When the prosecutor started to ask another question concerning the truth, Larsen's counsel objected and argued that the question had been asked and answered on numerous occasions. The court implicitly sustained the objection by stating, "I think [she] knows what telling the truth means. Why don't you [the state] ask another question."

After recross, the court again questioned the victim. The court asked her to explain what she meant by "touching problems" because she had testified earlier that she had "some touching problems, and then [she] said [she] didn't." In response, the following colloquy took place between the court and the victim:

A. Yeah. It means that someone is touching you somewhere they [sic] don't want you [sic] to be touching you.

Q. That's not touching you like when somebody just touches you.

A. Yes, I know.

Q. It's something different, right.

A. Yes.

Q. What does that mean to you?

A. It means if someone keeps on doing it and you say to please stop a million times, and they don't stop until they get good and ready to.

Q. And have you had touching problems with somebody else?

A. Yes.

Q. Who?

A. Who what?

Q. Who did you have these problems with?

A. Karl and the peanut man. I guess that's the way it—

Q. Sometimes what happens is, when you talk about two people, it's hard for people to say well, which person are you talking about. What touching problems did you have with Karl—not with the peanut man, but with Karl?

[DEFENSE COUNSEL]: Objection, asked and answered.

Q. BY THE COURT: You get to answer my questions. Go ahead.

A. Well, like if I was doing something—like if I was like helping him with what few dishes he had or something, he would start touching me, and I would ask him please to stop, and he wouldn't.

Q. How did he touch you?

A. What do you mean how?

[DEFENSE COUNSEL]: Objection; asked and answered.

Q. BY THE COURT: What did he do?

A. He touched me with his private parts.

Q. Okay. And you have already shown us what those are; right?

A. (The witness nodded head.)

The victim was dismissed after further questioning by the state and by Larsen's counsel. A doctor and a nurse from CARES then testified; the doctor testified to physical evidence of abuse; the nurse testified to the events surrounding an interview with the victim. A video tape of the interview between the nurse and victim was admitted. The case was then submitted to the jury which ultimately returned a guilty verdict on both counts.

The court held a sentencing hearing. Larsen did not present any mitigating evidence at the hearing. The court reviewed an extensive presentence investigation report before pronouncing the sentences. Larsen made a motion under I.C.R. 35 which was denied. Larsen appeals the judgments of conviction arguing that he was denied a fair trial by an accumulation of errors committed by the trial court.

Larsen also appeals his sentences arguing that they are unreasonable under the circumstances and that the district court abused its discretion in denying his Rule 35 motion. We affirm.

## DUE PROCESS AND FAIR TRIAL

Larsen argues that the court committed numerous errors that considered cumulatively denied him a fair trial in contravention of his constitutional right to due process. Larsen claims the following errors:

1. The trial court imposed special procedures for questioning the child victim, and the victim's rights coordinator was allowed to kneel beside the victim while she testified.

2. The trial court permitted the state to read the grand jury transcript to the victim.

3. The trial court addressed the victim by her first name.

4. The trial court commented and questioned the child victim on numerous occasions in a way that expressed the court's opinion that the child was telling the truth.

The cumulative error doctrine has been recognized in Idaho. *State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983). Under this doctrine the "accumulation of irregularities,·each of which in itself might be harmless, may in the aggregate show the absence of a fair trial." *Id.* (citations omitted). Cumulative error refers to a number of errors which taken together prejudice a defendant's right to a fair trial. *Id.* However, before this doctrine can be invoked, this Court must first determine if there were errors at all. Therefore, we will address each claimed error individually before applying this doctrine.

*A. Special procedures.* Larsen argues that the special procedures initiated by the trial court did not balance the defendant's right to a fair trial against the child witness's need for an environment that would not intimidate the child into silence or tears. *See State v. Cliff*, 116 Idaho 921, 924, 782 P.2d 44, 47 (Ct.App.1989). Larsen

alleges the court allowed the victim's rights coordinator to kneel next to the victim during her testimony and by doing so went beyond the scope of I.R.E. 615(c). The state argues that there is nothing in the record to support the factual allegation that the court instructed the coordinator to kneel beside the victim. The state is correct; the record surrounding the testimony of the victim and the court's special procedures lacks any reference to the coordinator being at the side of the victim during her testimony. After a thorough review of the record, we find that Larsen's counsel in closing argument did mention that the coordinator was beside the victim. Nevertheless, we cannot, without more, consider a passing comment in closing argument as evidence of the fact that the court acted erroneously. *Cf. Ebersole v. State*, 91 Idaho 630, 634, 428 P.2d 947, 951 (1967) (citing *Herren v. People*, 147 Colo. 442, 363 P.2d 1044, 1046 (1961)). Therefore, we must evaluate the remaining special procedures: that counsel sit in front of the victim when questioning her and that breaks be taken more frequently than normal.

▮▮▮ A trial court has the power to control the interrogation of a witness for the purpose of ascertaining the truth. I.R.E. 611(a). In establishing the special procedures the court gave an instruction to the jury cautioning them not to give any different weight to the testimony because of the procedures. The initial procedures were used for a short time. The court changed the procedure after the first break by requiring counsel to question the victim from a chair in front of the victim. This change was instituted by the court because of distractions in the courtroom which it found were "starting to chill the process" of determining what actually had happened to the victim—the search for the truth. Larsen objected to "these proceedings," however he failed to offer an argument as to why they were objectionable. On appeal Larsen makes a conclusory statement that the court failed to carry out the *Cliff* balancing test, but again fails to offer an argument as to why the procedures were unreasonable. The court did not expressly mention the balancing of Larsen's fair trial

right with the victim's need for a conducive environment. However, our reading of the record indicates the court protected Larsen's right by a cautionary instruction to the jury and protected the victim by the required procedures. We find that requiring counsel to sit in front of the victim and allowing for more frequent breaks was not an abuse of the court's discretion under I.R.E. 611.

▮▮ *B. Grand jury testimony.* Larsen claims the court erred by allowing the state to read portions of the grand jury transcript into the record under the guise of asking questions. At trial, Larsen objected to this procedure as "improper" but failed to elaborate the ground. The state argued that the questions were proper under I.R.E. 801 as prior inconsistent statements. The court ruled that the questions could be properly used as leading questions and there was no need to rule on admissibility under I.R.E. 801.

Larsen now argues that because the grand jury questions were all leading, the problem was compounded. Larsen, however, fails to explain what problem was compounded or that leading questions were improper under the circumstances. " 'A reviewing court cannot be expected to prosecute independent inquiry for some error upon which an appellant could possibly rely.' " *State v. Griffith*, 101 Idaho 315, 316, 612 P.2d 552, 553 (1980) (citing *Spriggs v. Copenhaver*, 459 P.2d 203 (Wyo. 1969)). At oral argument Larsen briefly claimed that the grand jury testimony was both a prior inconsistent statement and cumulative evidence, yet he failed to provide an argument as to why the statements should not have been admitted under I.R.E 801. It "has long been a rule of this Court that error is not presumed, an appellant bears the burden of showing wherein the district court erred." *Id.* Larsen has failed to meet this burden, therefore we will not presume error.

▮ *C. Addressing victim by first name.* Larsen argues that the court committed error by addressing the victim by her first name. This argument is without

merit. Counsel for Larsen used the victim's first name throughout the proceedings, as did the state. The court's approach was consistent with that used by both counsel. We find no error.

■ *D. Court questioning victim.* Larsen argues that the court went beyond the scope of its authority in questioning the victim, because the questioning arguably demonstrated to the jury that, in the court's opinion, the victim was telling the truth. Idaho Criminal Rule 614 authorizes the court to question witnesses and it also permits a party to object to the questions. An examination of the record does not disclose any questions by the trial court which would indicate it had formed an opinion that the victim was telling the truth. It does disclose, however, that the court, in implicitly sustaining an objection by Larsen, believed the victim did know what telling the truth meant. The record of the court's questioning indicates it was trying to clarify conflicting testimony; the court was seeking to determine what the victim meant by "touching problems," and attempting to sort out the identity of the person who had abused the victim. Therefore, we find the court's questioning did not exhibit an opinion, bias or prejudice that took it beyond the scope of I.R.E. 614. *See State v. Neil,* 58 Idaho 359, 74 P.2d 586 (1937).

■ Additionally, Larsen argues that the court failed to rule on his objections during the court's interrogation of the victim which also demonstrated to the jury that the court was of the opinion the victim was telling the truth. Larsen objected to two questions by the court and argued that they had already been asked and answered. At oral argument on appeal, Larsen claimed the court ignored his objections. Both of these objections were not expressly ruled on by the court, instead, the court told the victim she could answer one of the questions and in response to the other the court rephrased its question. The state argues that by these actions the court implicitly overruled the objections. We agree that a court can implicitly answer an objection. *See Cogswell v. C.C. Anderson*

*Stores Co.,* 68 Idaho 205, 222, 192 P.2d 383, 393 (1948) (court's failure to admonish jury after objection and request for instruction deemed effectively ruled on). On other occasions throughout the trial, the court implicitly ruled, for and against both parties, on objections without complaint by either party. Although we do not condone the court's failure to explicitly rule upon objections voiced during trial, we are not persuaded that the court's oversight here, in not expressly addressing Larsen's objections that certain questions had already been asked and answered, constituted an adverse impact on his substantial rights. *See,* I.R.E. 103.

In conclusion, with respect to the special procedures, the use of the Grand Jury testimony, addressing the victim by her first name, and the court's questioning the victim we find no errors. We have found no errors to accumulate which makes the cumulative error doctrine inapplicable, therefore we affirm the judgment of conviction.

## SENTENCE REVIEW

■ Larsen acknowledges the legality of the sentences imposed, but argues that they are excessive. In order to prevail, Larsen must demonstrate that the length of his sentences were greater than necessary to accomplish the goals of sentencing. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Larsen was sentenced to a determinate sentence of twenty-five years with an indeterminate life sentence for lewd conduct and to a concurrent fixed term of fifteen years for sexual abuse.

■ The court held a sentencing hearing and considered the presentence investigation report. The court addressed all the goals of sentencing before determining that Larsen was not a candidate for probation. The court considered the nature of the crime and Larsen's character; the predatory nature of the crimes; Larsen's long criminal history; and the need to protect society. Subsequently, Larsen filed a Rule 35 motion and a hearing was held. Larsen argued that his poor health and religious

discrimination at the penitentiary should mitigate the need for the sentences imposed. In denying the motion, the court ruled that Larsen's poor health was not sufficient to overcome the need to protect society and that he had habeas corpus remedies available for the alleged religious discrimination.

On appeal Larsen makes the same arguments he did at the Rule 35 hearing. The state counters that the additional circumstances fail to sufficiently mitigate the nature of the crime and Larsen's character. We agree. The criteria for examining a Rule 35 request for leniency are the same as those applied in determining whether the original sentence was reasonable, considering any additional facts presented under the Rule 35 motion. *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). After a thorough review of the record we find that the court did *not abuse its discretion in imposing the* sentences nor in refusing to reduce them under the Rule 35 motion. We affirm the sentences.

WALTERS, C.J., and SWANSTROM, J., concur.