878 P.2d 188

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Jeffrey BLACKSTEAD, Defendant–Appellant.**

No. 20165.

Court of Appeals of Idaho.

June 17, 1994.

Petition for Review Denied Aug. 23, 1994.

Alan E. Trimming, Ada County Public Defender, August H. Cahill, Jr., Chief Deputy, Boise, for appellant. August H. Cahill, Jr., argued.

Larry EchoHawk, Atty. Gen., L. Lamont Anderson, Deputy Atty. Gen., Boise, for respondent. L. Lamont Anderson argued.

LANSING, Judge.

James Jeffrey Blackstead was convicted of lewd and lascivious conduct with a minor under sixteen years of age, I.C. § 18–1508, and was given a unified sentence of twelve years with a minimum term of five years. He asserts that the district court erred during his trial when it admitted certain testimony. Additionally, he contends the court abused its discretion by imposing an unreasonably harsh sentence. For the reasons stated below, we find no error in the district court's evidentiary rulings and no abuse of discretion in sentencing.

Blackstead's conviction arose from an alleged sexual encounter with R.S., the fifteen-year-old daughter of a family friend. According to the trial testimony of R.S., the following events occurred. On about August 11, 1990, Blackstead hired R.S. to assist him in painting his hallway. When R.S. arrived, she began painting, but after only a few minutes began discussing with the defendant her desire to become a model. Their conversation was interrupted by the arrival of a visitor, at which point Blackstead directed R.S. to go to a back room and stay there. After approximately thirty minutes, Blackstead retrieved her from the back room and offered her marijuana. She accepted the marijuana and "smoked a bowl." R.S. then observed Blackstead in the bathroom, nude and snorting something. When he returned to R.S., he offered her some "peanut butter crank," which she used. While she was under the influence of these substances, Blackstead had intercourse with her. Blackstead then returned R.S. to her home and, before departing, gave her forty dollars and a bag of marijuana.

During the trial the victim and a close friend, E.M., testified that several days after this first sexual encounter, Blackstead arrived at R.S.'s home while she was there with her younger sister and E.M. Blackstead allegedly provided drugs, including crank, which he and the two older girls used. He questioned E.M. about whether she was using birth control, and inquired of R.S. if she could "slip away for awhile." R.S. declined this invitation, and Blackstead eventually left. Blackstead was not charged with any crime in connection with this incident.

The indictment also alleged charges for lewd conduct and the infamous crime against nature stemming from another incident of sexual contact between the defendant and R.S. occurring approximately three to four weeks after the initial molestation. Evidence of this later incident was also presented at trial. The jury, however, returned verdicts of not guilty on the charges stemming from this last occurrence.

Several months after the alleged molestations, R.S. was admitted to a substance abuse

treatment facility. During the course of therapy, in January 1991, she disclosed the above incidents of sexual abuse to her therapist. The police were informed, and an investigation resulted in this prosecution.

Blackstead asserts error in the admission of several elements of testimony at trial. He asserts that the district court erred in allowing testimony that Blackstead used drugs and provided drugs to R.S., and in admitting testimony regarding a sexual encounter between Blackstead and R.S.'s mother. He argues that this testimony constituted evidence of uncharged misconduct admitted for the purpose of impugning Blackstead's character in violation of I.R.E. 404. Blackstead also contends the state should not have been allowed to present testimony, through an expert witness, regarding late disclosures by victims of sexual abuse. Finally, the defendant asserts error in the admission of the testimony of the victim's friend, E.M., regarding R.S.'s partial disclosure of the alleged sexual abuse to E.M.

## I. EVIDENCE OF DRUG USE

Blackstead asserts that testimony that he used drugs and provided drugs to R.S. was inadmissible because its only purpose was to show that he was of bad character and had a propensity to commit crimes. This, he contends, violates I.R.E. 404, which prohibits the introduction of character evidence to show the criminal propensity of the defendant and evidence of other crimes or wrongs to show conduct in conformity therewith. The district court found that the evidence was necessary to provide the jury a complete story of the underlying crime since the drug use was "part and parcel" of the events surrounding Blackstead's sexual molestation of R.S. Characterizing this evidence as part of the res gestae of the underlying crime, the court ruled that it was admissible.

We begin with a statement of our standard of review regarding evidence of other crimes. Under Rule 404, evidence of prior crimes or wrongs is inadmissible to prove the defendant's character or propensity to commit such acts. See State v. Winkler, 112 Idaho 917, 736 P.2d 1371 (Ct.App.1987). Evidence of other crimes may be admitted, however,

when relevant for other purposes including proof of knowledge, identity, plan, preparation, opportunity, notice, intent and the absence of mistake or accident. I.R.E. 404(b); State v. Pizzuto, 119 Idaho 742, 810 P.2d 680 (1991); State v. Guinn, 114 Idaho 30, 34, 752 P.2d 632, 636 (Ct.App.1988).

Questions regarding the admissibility of evidence under I.R.E. 404 present a two-level inquiry. The court must first determine whether the evidence is relevant to some purpose other than proof of the defendant's character. State v. Buzzard, 110 Idaho 800, 802, 718 P.2d 1238, 1240 (Ct.App. 1986). In considering this issue on appeal we exercise free review since relevancy is a question of law. State v. Raudebaugh, 124 Idaho 758, 766, 864 P.2d 596, 604 (1993). Upon finding a relevant and permissible purpose for the evidence, the trial court must then exercise its discretion in weighing the probative value of the evidence against any unfair prejudicial impact to decide whether the evidence should be admitted. Buzzard, 110 Idaho at 802, 718 P.2d at 1240. On appeal we review this determination for an abuse of discretion. State v. Hedger, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); State v. Medrano, 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App.1992).

The challenged evidence consists of two separate occurrences of drug use. The district court held that both incidents were part of the "res gestae" of the crime and therefore admissible. We will consider first the district court's determination that the evidence of drug usage at the time of the first incident of lewd conduct was part of the res gestae of the charged crime.

Res gestae is defined in part as: "The whole of the transaction under investigation and every part of it." BLACK'S LAW DICTIONARY 1305 (6th ed. 1990). The term is most often used in connection with Rule of Evidence 803(2), the "excited utterance" exception to the hearsay rule. See generally, 2 Kenneth S. Broun et al., McCORMICK ON EVIDENCE § 268, at 206–208 (John W. Strong, ed., 4th ed. 1992) [hereinafter McCORMICK ON EVIDENCE]. It has been otherwise used, however, with reference

to an exception to the general prohibition against use of other misconduct evidence. In this context, *res gestae* refers to other acts that occur during the commission of or in close temporal proximity to the charged offense which must be described to "complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings." 1 McCORMICK ON EVIDENCE § 190, at 799. McCormick suggests the use of the term "*res gestae*" in this context is inappropriate and that the term "complete story principle" would be more appropriate. *Id.* at 800, n. 13.[1]

Idaho has recognized this exception to the general restriction against evidence of other crimes. In *State v. Izatt*, 96 Idaho 667, 534 P.2d 1107 (1975), the Idaho Supreme Court ruled that evidence of an uncharged crime, the infamous crime against nature, was admissible in a rape trial because the uncharged act was so interconnected with the rape that a complete account of the charged offense could not be given to the jury without disclosure of the crime against nature. The Court explained:

> As well stated by the Colorado Supreme Court in *Monge v. People,* "[a]ll facts inseparably connected to the chain of events of which the act charged in the information is a part are admissible even though the full story shows the commission of other crimes," *Monge v. People,* 158 Colo. 224, 406 P.2d 674, at 678 (1965). We adopt that rule.
>
> The state is entitled to present a full and accurate account of the circumstances of the commission of the crime, and if such an account also implicates the defendant or defendants in the commission of other crimes for which they have not been charged, the evidence is nevertheless admissible. The jury is entitled to base its decision upon a full and accurate description of the events concerning the whole criminal act, regardless of whether such a description also implicates a defendant in other criminal acts.

*Izatt,* 96 Idaho at 670, 534 P.2d at 1110.

We conclude that the alleged drug use by Blackstead and the victim shortly before the sexual molestation and his gift of marijuana to her immediately thereafter were inextricably connected with the charged sexual offense. The drug use was part of the immediate interaction between Blackstead and R.S., and R.S. asserted that she was under the influence of the drugs when the intercourse occurred. Disclosure of the drug use was necessary in order to give the jury a full explanation of how the sexual contact came about. Indeed, the use of drugs could be perceived as part of Blackstead's method of accomplishing the charged crime by using drugs to entice R.S. or to lower her resistance to his sexual advances and to afterward reward her for what Blackstead perceived to be acquiescence or cooperation.

Blackstead argues, however, that the need to give a complete story is not an exception enumerated in I.R.E. 404(b) and should not be judicially created. He urges this Court to adopt a restricted reading of I.R.E. 404(b), which limits the use of other misconduct evidence to the exceptions there listed. This argument ignores the plain language of I.R.E. 404(b) which prohibits such evidence only where its sole purpose is to show propensity or character. The enumerated "other purposes" for which evidence of other crimes, wrongs or acts may be admitted is not exhaustive. *See State v. Rodriguez,* 118 Idaho 948, 951, & n. 1, 801 P.2d 1299, 1302 & n. 1 (Ct.App.1990); Report of the Idaho State Bar Evidence Committee, Comment to Rule 404, 12/16/1983 *rev.* 6/1/1985.

Even where relevant to issues other than propensity or character, however, evidence of the defendant's other misconduct should be excluded pursuant to I.R.E. 403 if its probative value is substantially outweighed by the danger of unfair prejudicial impact on the jury. Here, the district court correctly concluded that the evidence was relevant and, upon weighing the probative value against any prejudicial impact, found the evidence admissible. The district court recognized the balancing test under Rule 403 as one of discretion and applied the appropriate legal

---

1. The Idaho Supreme Court has also criticized use of the "*res gestae*" term "because it is obscure and indefinite." *State v. Alvord,* 47 Idaho 162, 169, 272 P. 1010, 1012 (1928).

standards. We can find no abuse of discretion in its decision.

█ We next address Blackstead's contention that evidence of the second incident of drug use violated Rule 404. The district court concluded that the subsequent meeting where drugs were used by Blackstead, the victim and E.M. was also part of the *res gestae* and part of the process by which Blackstead was "grooming" R.S. for sexual contact.

As discussed above, *res gestae* or the "complete story principle" is an exception to the Rule 404(b) prohibition of other misconduct evidence only where the charged act and the uncharged act are so inseparably connected that the jury cannot be given a rational and complete presentation of the alleged crime without reference to the uncharged misconduct. The use of drugs by the defendant, R.S. and E.M. at R.S.'s residence, occurring several days after the first charged molestation and several weeks before the second alleged molestation, bore no immediate temporal connection to either of the charged acts of lewd conduct. Nor was presentation of this evidence necessary to give the jury a complete story of the commission of the crimes. Therefore, the district court's conclusion that this evidence was part of the *res gestae* was error.

█ This does not end our inquiry, however, for the district court also stated that this evidence was relevant to Blackstead's process of grooming R.S. for sexual exploitation. This presents an independent rationale for relevance which we must examine. From the record it is apparent that the state sought to show that Blackstead used drugs as a method of seducing or lowering the resistance of the victim and rewarding her for submission to his sexual demands. It must be remembered that although Blackstead was convicted for only the first alleged offense on August 11, 1990, the state had charged and at trial presented evidence of a second molestation several weeks later. The occasion when Blackstead allegedly gave drugs to R.S. and E.M. and asked R.S. to "slip away" preceded the second charged sexual offense. We conclude that evidence of this intervening meeting and drug use with R.S. and E.M. was probative of a continuing criminal design by Blackstead to cultivate a relationship with R.S., induce her submission to his sexual demands and procure her silence through use of drugs—a process which the district court referred to as "grooming."

More than sixty years ago, a similar evidentiary issue was presented to the Idaho Supreme Court in *State v. Alvord*, 47 Idaho 162, 272 P. 1010 (1928). There, evidence was admitted showing that the defendant accused of rape had offered intoxicating liquor to a fourteen-year-old girl and her companions before he had intercourse with the girl. The Court held the testimony of the offer of liquor relevant as evidence of the defendant's design to bring about sexual intercourse. The Court explained:

> Evidence of a plan or design or scheme put into execution is relevant, if it tends by reasonable inference to establish the commission of the crime charged.... Speaking of this kind of evidence, Wigmore (section 304) says:
>
> > "... The result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed."

*Id.* at 174, 272 P. at 1013 *quoting* 1 John H. Wigmore, EVIDENCE § 304 (2d ed. 1923). Although *Alvord* was decided long before adoption of the Idaho Rules of Evidence, the Court's reasoning remains persuasive and applicable to the case before us. Proof of a plan to commit the charged crime is a purpose authorized by I.R.E. 404(b) for introduction of other crimes evidence. Therefore, in cases where uncharged criminal acts of the defendant were in furtherance of an underlying plan to commit the charged crime, those acts are, as in *Alvord*, admissible to show the accomplishment of the criminal goal.

Although the probative value of this evidence would have been more questionable if Blackstead had been tried for only the previously accomplished offense of August 11, we are persuaded the evidence was relevant to the alleged subsequent molestation; this testimony indicated an on-going scheme by Blackstead to accomplish further sexual contacts with R.S. through use of drugs as a

means of persuasion and inducement. Stated differently, the evidence showed Blackstead's steps allegedly effectuating a plan to accomplish one of the charged offenses.

Accordingly, the district court properly deemed the episode of drug usage at R.S.'s home to be probative of Blackstead's "grooming" of R.S. for his elicit purposes. This was a permissible use of the evidence for an objective other than demonstrating Blackstead's character or propensity. We find no abuse of discretion in the district court's determination that the probative value of this evidence was not outweighed by unfair prejudice.

## II. EVIDENCE OF SEXUAL RELATIONSHIP WITH VICTIM'S MOTHER

■ Blackstead also argues that the district court erred when it allowed R.S.'s mother to testify to a sexual relationship between herself and Blackstead. R.S.'s mother testified that sometime in July of 1990, while Blackstead was visiting her home, she and Blackstead agreed to have a sexual encounter later that evening. At the arranged time, she testified, Blackstead returned to her home, climbed through her window and attempted consensual intercourse. This testimony, Blackstead contends, was character evidence prohibited by I.R.E. 404 because it was offered only to show that he was inclined to engage in adulterous relationships.

The district court ruled that this testimony was relevant to R.S.'s credibility with respect to an issue that defense counsel introduced through his cross-examination of R.S. Blackstead's attorney had challenged R.S.'s credibility by asking her whether, when she reported to her therapist the molestation by Blackstead, she had also stated that Blackstead had raped her mother. R.S. replied "No, that is a lie." On redirect examination, and without objection from the defendant, the state asked R.S. to explain what she had actually told the therapist. R.S. then testified she had related to her therapist that Blackstead had told R.S. he had a sexual relationship with R.S.'s mother and that he had climbed through her mother's window to have this tryst. The following day, over

Blackstead's objection, the state elicited testimony from R.S.'s mother confirming that this sexual encounter between herself and Blackstead had occurred.

Applying the standards previously enunciated for scrutiny of this evidence under I.R.E. 403 and 404, we must first determine whether the mother's testimony was probative of material issues other than the character of the defendant.

The district court determined that the evidence was probative in that it tended to corroborate the truthfulness of statements R.S. made to her therapist and confirmed the accuracy of her perceptions of reality. We agree. This evidence was made relevant by the defendant's own cross-examination of R.S. The defense strategy was to attack R.S.'s credibility by showing her to be lying or fantasizing. By implying that R.S. invented a story about Blackstead raping her mother, the defense made the mother's testimony relevant because it indicated that R.S. was not fabricating or fantasizing but was speaking truthfully in what she reported to her therapist. Accordingly, the evidence was relevant to a material issue other than Blackstead's character.

■ The district court also properly balanced the probative value of this testimony against possible unfair prejudice pursuant to I.R.E. 403. The court limited the scope of the mother's testimony regarding her sexual relationship with Blackstead to that information tending to corroborate R.S. and excluded other details, including information about drug use, that could have been unfairly prejudicial to the defendant. We find no abuse of discretion by the trial court in admitting this evidence.

## III. EXPERT TESTIMONY

■ Next, Blackstead asserts error in the admission of testimony of Mydell Yeager, a licensed counselor who specialized in the treatment of victims of childhood sexual abuse. Ms. Yeager, called as a witness by the state, testified about behavioral characteristics of sexual abuse victims, including delay in disclosing the abuse. Before Ms. Yeager was called, R.S. had already testified

that she had not disclosed Blackstead's molestation earlier because:

"I was afraid what people would think. I was afraid to get blamed for it. I was afraid to hurt my mom. And I was afraid to face it."

Blackstead argues that because R.S. had already explained why she delayed in reporting, Ms. Yeager's testimony indicating the reasons that sexual abuse victims typically delay in disclosing the offense merely vouched for the credibility of R.S., was cumulative, and was therefore inadmissible.

■■ I.R.E. 702 provides that testimony of qualified expert witnesses may be admitted if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Under this rule expert testimony is admissible where it will assist the jury in areas of inquiry that would be outside the common experience and knowledge of a lay juror and would assist the jury in deciding a material issue. *State v. Hester*, 114 Idaho 688, 694, 760 P.2d 27, 33 (1988). When the trial court has admitted expert testimony we review the ruling for an abuse of discretion. *State v. Hoisington*, 104 Idaho 153, 165, 657 P.2d 17, 29 (1983).

■■ It is well established that expert testimony regarding characteristics of child sexual abuse victims is admissible where it will aid the jury's understanding of the complaining witness' conduct. In *State v. Lawrence*, 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986), we held that expert testimony regarding late reporting by child abuse victims was admissible because this is a matter which a jury may have difficulty understanding and because children may have difficulty articulating the reasons for their behavior.

More recently, in *State v. Ransom*, 124 Idaho 703, 864 P.2d 149 (1993), the Idaho Supreme Court upheld the admission of a sexual abuse counselor's testimony describing common reactions of children subjected to sexual abuse and explaining why children may not immediately report the abuse, why such children refer to the abuse as being like a dream, and why they maintain contact with

their abusers. The Supreme Court there stated:

It is not unlikely that, absent expert assistance, jurors might mistake such behavior reactions for inaccuracy or fabrication. Hopefully, knowledge of common characteristics of sexually abused children gained from behavioral science research very well may aid a jury in weighing the testimony and determining the credibility of the alleged victim.

*Id.* at 710, 864 P.2d at 156.

■■ On the other hand, Blackstead is correct in observing that an expert witness may not give an opinion as to the credibility of a particular witness. In *State v. Johnson*, 119 Idaho 852, 810 P.2d 1138 (Ct.App.1991), we held that a medical doctor should not have been permitted to present his opinion that two children had been sexually abused because the physician had no basis for such an opinion apart from his assessment of the children's credibility. The physician was a general practitioner with no special expertise in the area of child abuse. He found no physical evidence that the children had been molested, and his only source of information to support his opinion was his interview of the children and their mother. Under those circumstances, we held the physician's opinion was nothing more than a judgment that the children's story was credible, an assessment which invaded the province of the jury.

Similarly, in *State v. Allen*, 123 Idaho 880, 853 P.2d 625 (Ct.App.1993), we concluded that the trial court should have excluded the opinion of a child psychiatrist that the victim actually experienced the events she described, based solely on the psychiatrist's observations of the victim as she told her story. The psychiatrist had not attempted to diagnose whether the child was a victim of child abuse by utilizing diagnostic tests or techniques which were beyond the common experience of jurors or by comparing whether the child's behavior patterns were consistent with behavioral characteristics of other sexually abused children. Instead, the psychiatrist's opinion was based upon an interview of the child and her mother during which the psychiatrist evaluated the child's credibility by considering such factors as the

logical consistency of her story, her body language, whether her story appeared rehearsed or spontaneous and whether the child or her mother appeared to have some motive for bringing charges of sexual misconduct against the defendant. We held that the psychiatrist's testimony did not assist the jury by providing specialized knowledge since the psychiatrist's criteria for evaluating the victim were the same criteria commonly used by jurors to determine the credibility of witnesses. We further held that the psychiatrist's testimony was inadmissible because it constituted an assessment of the victim's credibility. *See also State v. Raudebaugh*, 124 Idaho at 768, 864 P.2d at 606.

Blackstead's argument that Ms. Yeager's testimony amounted to nothing more than vouching for the victim's credibility and was cumulative to the victim's own testimony overlooks the distinction between testimony that merely opines as to the victim's credibility and testimony which corroborates elements of the victim's story or aids the jury in evaluating the victim's truthfulness. The testimony given by the counselor in the present case is not comparable to that found to be inadmissible in *Johnson* and *Allen*. Ms. Yeager had never interviewed R.S. or reviewed her records, and she offered no testimony directly addressing R.S.'s own experiences. Neither did she present an opinion as to whether R.S.'s testimony was truthful, whether R.S. had been abused or by whom. Rather, Ms. Yeager testified that victims of sexual abuse characteristically do not report the abuse quickly, and she explained the reasons for this delayed reporting, including feelings of guilt and fear. Ms. Yeager's testimony was offered to negate an inference that R.S.'s behavior was not consistent with a truthful accusation of sexual abuse. During cross-examination of R.S., Blackstead's attorney had presented questions implying that R.S. did not raise allegations against Blackstead until she was motivated by a desire to avoid being returned from the substance abuse treatment facility to her mother's care. Ms. Yeager gave the jurors specialized knowledge that could help them evaluate the credibility of R.S.'s explanation as to why she failed to more promptly disclose the alleged abuse. The expert did not, however, comment on R.S.'s veracity, and her testimony was not cumulative to R.S.'s testimony. Accordingly, the counselor's testimony was properly admitted.

## IV. STATEMENT TO FRIEND

■ Next, Blackstead asserts error in the admission of the statement of E.M., a friend of R.S., who testified that R.S. had told her about being molested by Blackstead shortly after the event. Blackstead acknowledges that this testimony was not hearsay because it was not offered for the truth of the matter, but rather to show that R.S. had promptly reported the molestation to someone. Blackstead argues, however, that the testimony was inadmissible because it was cumulative and more prejudicial than probative.

The district court allowed E.M. to testify that R.S. had told her of a sexual relationship with Blackstead, but without disclosure of the content of the conversation. The court found this testimony relevant because Blackstead had emphasized R.S.'s late disclosure in challenging her credibility during cross-examination. Blackstead argues that this evidence was cumulative and improper bolstering of R.S.'s testimony since he had not attempted to impeach R.S. with regard to whether she told E.M. of the molestation.

Statements by witnesses which corroborate the facts to which another has already testified are not necessarily inadmissible because they are "cumulative." Rule of Evidence 403 prohibits the introduction of *needlessly* cumulative evidence. There is no merit in the argument that this evidence was needless. The entire tenor of Blackstead's defense was that the victim had recently fabricated the allegations against him for the purpose of staying at the treatment facility or being placed with her stepmother rather than returning to her natural mother. Such an implication of recent fabrication gives importance to evidence corroborating the victim's testimony that she had mentioned the defendant's misconduct to someone within days of the occurrence.

## V. CUMULATIVE ERROR

The defendant argues that even if each of the errors he has asserted is insufficient, standing alone, to warrant a new trial, the cumulative effect of the errors was to deny the defendant a fair trial in violation of his right to due process. While this Court has recognized the doctrine of cumulative error, *State v. Campbell,* 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983); *State v. Larsen,* 123 Idaho 456, 459, 849 P.2d 129, 132 (Ct.App.1993), a necessary predicate to application of the doctrine is a finding of error in the first instance. As discussed above, the district court did not err when it admitted the evidence challenged by Blackstead on this appeal. Therefore, the doctrine of cumulative error is inapplicable.

## VI. SENTENCE

Finally, Blackstead argues that the sentence imposed—five years determinate plus seven years indeterminate—was unreasonably harsh and an abuse of the trial court's discretion.

Our standard of review in this area is well defined. We review the sentence to determine if there has been an abuse of discretion, focusing upon the nature of the offense and the character of the offender. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). Where, as here, the sentence is not illegal, the defendant bears the burden of showing that it is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). For purposes of appellate review we consider the minimum period of confinement as the probable duration of incarceration. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Where reasonable minds might differ as to the length of the sentence, we will not substitute our view for that of the district court. *State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992); *Toohill, supra.*

In this case the minimum period of confinement that Blackstead will serve is five years. The crime of which he was convicted was extremely serious, carrying a potential sentence of life imprisonment. At the time of sentencing, Blackstead was forty years old and held a position as a draftsman in an architectural firm. He had a prior criminal history with numerous drug-related arrests. Evidence before the sentencing court indicated that Blackstead had been a drug dealer who supplied drugs to individuals, initially for free, but later charging a price after the donees became addicted. The evidence in the present case indicates that drugs played a role in Blackstead's molestation of R.S. To his credit, Blackstead had at the time of sentencing successfully completed a substance abuse treatment program. Appended to the presentence report were numerous letters from family and friends, all indicating that Blackstead had made positive changes in his life and was overcoming his substance abuse.

All of these factors were considered by the district court in imposing sentence. It is apparent from the transcript of the sentencing hearing that the court properly considered the primary purpose of sentencing, the protection of society, while at the same time considering Blackstead's potential for rehabilitation. The court reviewed Blackstead's previous criminal record and the fact that he continued to deny the crime against R.S., and determined that Blackstead was not a fit candidate for probation. The court also indicated that the sentence was fashioned with a view toward retribution and deterrence in the belief that any lesser punishment would depreciate the seriousness of the crime and would not serve to deter such behavior. The court thus considered all of the appropriate factors. Viewing this sentence in the totality of the circumstances, we cannot conclude that the sentence was an abuse of discretion.

## VII. CONCLUSION

Finding no error in the admission of evidence at trial and no abuse of discretion in

the sentence, we affirm the judgment and the sentence imposed by the district court.

WALTERS, C.J., and PERRY, J., concur.