**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44322**

| | |
|---|---|
| DAVID JOSEPH MEISTER, | ) |
| | ) Filed: December 24, 2018 |
| Petitioner-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Carl B. Kerrick, District Judge.

Order summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Catherine M. Mabbutt, Moscow, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

David Joseph Meister appeals from the district court's order summarily dismissing his petition for post-conviction relief. Specifically, Meister challenges the district court's dismissal of his claims that appellate counsel was ineffective, trial counsel was ineffective, the district court erred in limiting the testimony of his expert witness, his due process rights were violated because the jury room was insufficiently insulated, cumulative error denied him a fair trial and effective assistance of counsel, and the district court abused its discretion by denying his motion for discovery. For the reasons provided below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In northern Idaho in 2001, a woman, T.H., was shot and killed in her home, which she shared with her boyfriend, J.L. Based on footprints in the snow, it was determined that the shooter first approached the front entrance to the woman's home and then proceeded to the back

1

entrance. When the woman opened the back door, she was shot once in the chest and once in the face. The shooter then retreated behind the home and through a snow-covered field, which exited onto a nearby road. A neighbor heard the shots and went to the woman's home. He called 911 and unsuccessfully made resuscitation efforts. The woman was pronounced dead at the scene.

Almost a year later, police officers interrogated Meister in connection with the woman's death. Meister confessed that he was paid $1,000 by the victim's boyfriend to kill the victim. Meister was charged with first degree murder and conspiracy to commit murder. Prior to trial, Meister filed a motion to suppress his confession, which the district court denied. A jury convicted Meister on both charges, and Meister appealed. On appeal, this Court determined that the district court did not err in admitting Meister's confession; however, the Court concluded the district court erred by not admitting evidence of an alternate perpetrator. *State v. Meister*, Docket No. 30152 (Ct. App. Oct. 2007) (unpublished). The State petitioned the Idaho Supreme Court for review regarding the alternate perpetrator issue, which the Court granted. The Idaho Supreme Court held that the district court applied the wrong standard for admissibility of alternate perpetrator evidence, vacated Meister's judgment of conviction, and remanded the case for a new trial. *State v. Meister*, 148 Idaho 236, 220 P.3d 1055 (2009).

Preceding the second trial, the State filed a motion regarding the law of the case doctrine, requesting that the district court limit relitigation of any issue addressed on appeal by either this Court or the Idaho Supreme Court. The district court granted the motion in part and denied the motion in part, ruling only issues addressed by the Supreme Court were precluded from relitigation. In addition, the district court applied the law of the case doctrine to all unappealed rulings of the district court, unless there was a showing that the decision was clearly erroneous and a manifest injustice would result.

Meister then filed another motion to suppress his confession, arguing it was coerced. After a hearing in which Meister's expert witness, Dr. O., provided testimony regarding the coercive nature of certain interrogation techniques, the district court ruled Meister's confession was not coerced and denied Meister's motion to suppress. The State filed a motion in limine to preclude Dr. O.'s testimony, arguing that based on the district court's ruling, any testimony would be irrelevant. The district court ruled that Dr. O. would be permitted to offer testimony regarding false confessions in general; however, the district court's previous ruling on the

2

voluntariness of Meister's confession would stand. The court also ruled that Dr. O. could not testify regarding the voluntariness of Meister's confession. Finally, the district court ruled Dr. O.'s testimony would be limited because he would not be permitted to offer an opinion regarding the truth or falsity of Meister's confession.

At Meister's second trial, Dr. O. testified regarding false confessions in general, including theories of how certain interrogation tactics can result in an innocent person's confession to a crime. The State questioned Dr. O. about the percentage of cases he reviewed which resulted in a false confession. Meister then requested that Dr. O. testify regarding the application of his theories regarding false confessions to circumstances surrounding Meister's confession, arguing that the State's questioning opened the door for such. The district court denied the request.

During closing argument, trial counsel stated the police initially presented Meister with the evidence against him. The officer sat "knee-to-knee" with Meister, attacking him for forty minutes. Counsel argued that, after hours of interrogation, officers presented Meister with the idea that Meister had been hired by a co-worker to kill his girlfriend, offered Meister leniency and said that the co-worker, not Meister, was the bad person and that they wanted to help Meister. Counsel stated, "That's the point from Dr. O. And that's the point you get to by doing all of the things that [the officers] did in their interrogation of him to result in a false confession. They made it hopeless, and they provided him an out." Counsel then discussed the parts of Meister's confession that contradicted the evidence; *i.e.*, that Meister claimed to see a police vehicle on a road while fleeing when, in fact, no police vehicle was on that road. Meister also confessed to throwing away the bullets as he fled, yet several witnesses testified that Meister offered to give them bullets in the following days. Meister also claimed he discarded his clothes in the field, yet no clothes were ever found. Counsel finally stated, "The circumstances offered by Dr. O. provide for, create the circumstances of a false confession."

In addition, the State introduced evidence of two bullets found at the scene--one found in the wall of the victim's home and the other removed from the victim's body--as well as two cartridge cases. Two firearms experts testified that the bullets were fired from a High Point nine millimeter semiautomatic handgun, the bullets were remanufactured, and the bullets were consistent with those remanufactured by Ultramax. The State also presented evidence that Meister had purchased a High Point nine millimeter semiautomatic handgun and Ultramax

remanufactured ammunition days prior to the victim's death. Meister admitted in his testimony that he purchased the gun, but testified that he sold the gun and ammunition to a stranger at a party the day before the victim's death. The day after the victim's death, the gun manual and tools were found under Meister's refrigerator. The person who sold the gun to Meister testified that Meister said he was "going to shoot somebody in the face." The State presented testimony that Meister offered at least two individuals a box of nine millimeter ammunition for free. One witness testified Meister told the witness that Meister wanted to get rid of the ammunition because he was afraid it was used in a crime, and the witness and Meister then threw the ammunition into a dumpster. Photographs of footprints found at the scene of the crime were introduced showing prints in the snow leading from the backdoor of the home, through a field, over some fences, and to a road. A shoeprint analysis was conducted, showing the footprints were likely created by a size 8-1/2 to 9-1/2, and the tread design was consistent with that of an Osiris ODS shoe. Multiple witnesses testified that Meister owned Osiris ODS shoes, and a shoe salesman testified that he measured Meister's foot and that his shoe size was 8-1/2 to 9. Two people testified that they saw a person walking along the highway near the victim's home immediately before the victim's death. The person was described as male, wearing a plaid flannel shirt, dark baggy pants, and possibly a scarf and that he walked with an unusual gait. The witnesses testified the person fit the physical size of Meister. In his confession, Meister stated that prior to going to the victim's home, he drank a couple of beers, put on dark corduroy pants, a red flannel shirt, black scarf, and black beanie. Witnesses also testified that on various occasions Meister stated whoever committed the murder must have been pretty smart to not have been caught. Additionally, Meister asked one witness, "What would you say if I told you I did it?" then stated, "Well, I did it," followed by "No, no I'm just kidding." Meister also told another, while watching a detective show, that a co-worker paid him $1,000 to kill the co-worker's girlfriend, that Meister walked to her house, knocked on the door, and shot her in the face and chest, then ran to a field where he had stashed some clothes and shoes, changed clothes, and threw the gun and shoes in a garbage can.

After a four-week trial in which numerous motions were filed, the jury found Meister guilty of both first degree murder and conspiracy to commit first degree murder. Meister filed a motion for acquittal or in the alternative a new trial, which was denied. The district court imposed concurrent determinate life sentences for each charge, and Meister appealed.

On his second direct appeal, Meister claimed the district court abused its discretion by denying his request to permit Dr. O. to testify regarding the application of his theories to the facts surrounding Meister's confessions. This Court determined that any error, if there was one, was harmless because of the overwhelming amount of evidence supporting a finding of guilt. In addition, we determined any alleged error was harmless because the information Meister sought to get before the jury was presented during trial counsel's closing statement. *State v. Meister*, Docket No. 39807 (Ct. App. Mar. 4, 2014) (unpublished). Meister petitioned the Idaho Supreme Court to review this Court's determination that any error was harmless, which the Supreme Court denied.

Meister filed a petition for post-conviction relief and a declaration in support, asserting forty-five claims of either ineffective assistance of appellate counsel, ineffective assistance of trial counsel, or general constitutional violations. The State filed a motion to summarily dismiss the petition for post-conviction relief, which the district court granted. In dismissing the petition for post-conviction relief, the district court grouped claims based on the alleged violation. Regarding the claims of ineffective assistance of appellate counsel, the district court found that Meister had failed to show that any of the purported ignored issues were clearly stronger than the claim presented on the second direct appeal, and therefore he failed to establish the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984): deficient performance. In addition, the district court ruled that Meister presented no evidence that even if the issues were presented he would have prevailed on appeal, and therefore he also failed to establish the second prong of *Strickland*: prejudice. Regarding the claims of ineffective assistance of trial counsel, the district court ruled Meister failed to demonstrate that he suffered any prejudice due to any alleged deficiency. Further, the district court found that Meister failed to establish, for the majority of the claims, that tactical decisions of counsel fell below an objective standard of reasonableness or the decisions were based on lack of preparation or ignorance of the law. Additionally, regarding claims that trial counsel was deficient for failing to present certain evidence, the district court ruled that Meister could not show prejudice due to the overwhelming evidence of guilt. Regarding the district court's limiting of Dr. O.'s testimony, the district court ruled that the issue had already been raised on direct appeal and would not be reconsidered. The district court ruled that Meister's claim the jury room was insufficiently insulated was bare, conclusory, and unsupported by admissible evidence because he failed to present any evidence regarding the

5

2011 trial. Additionally, the court ruled the issue should have been raised on direct appeal and therefore was waived. The court also ruled that because no error had been shown, there likewise was no cumulative error. Finally, as to Meister's motion for discovery, the district court ruled that the discovery requests were overly broad and would not lead to evidence which would protect one of Meister's substantial rights. Meister timely appeals.

## II.

## ANALYSIS

On appeal, Meister only challenges the district court's dismissal of his post-conviction claims: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) error for limiting the testimony of Meister's expert; (4) a due process violation when the jury was exposed to extrinsic evidence because the jury room was insufficiently insulated from the sound of courtroom proceedings; (5) cumulative error; and (6) error for denying his motion for discovery materials.

### A. Ineffective Assistance of Counsel

On appeal, Meister argues he received ineffective assistance of both trial and appellate counsel. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

6

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### 1. Appellate counsel

In his petition for post-conviction relief, Meister alleged sixteen claims of ineffective assistance of appellate counsel. The district court dismissed all sixteen claims. On appeal, Meister only challenges the district court's dismissal of three claims which, according to Meister, related to claims which were clearly stronger claims than the one claim raised by appellate counsel in the second direct appeal.

The right to effective assistance of counsel extends to the defendant's first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Mintun v. State*, 144 Idaho 656, 658, 168 P.3d 40, 42 (Ct. App. 2007). Claims for ineffective assistance of appellate counsel are

analyzed under the same two-prong test set forth in *Strickland* as that of ineffective assistance of trial counsel. *Dunlap v. State*, 159 Idaho 280, 296, 360 P.3d 289, 305 (2015). Thus, to prevail under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. In order to survive a motion for summary dismissal, the petitioner must establish the existence of material issues of fact as to both prongs. *Dunlap*, 159 Idaho at 296, 360 P.3d at 305.

An indigent defendant does not have a constitutional right to compel appointed appellate counsel to press all nonfrivolous arguments that the defendant wishes to pursue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Mintun*, 144 Idaho at 661, 168 P.3d at 45. Rather, the process of sorting out weaker arguments on appeal and concentrating on those more likely to succeed, far from being the sign of incompetence, is the hallmark of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Mintun*, 144 Idaho at 661, 168 P.3d at 45. The right of effective assistance of appellate counsel only requires that "appellate counsel's choice of issues for appeal did not fall below 'an objective standard of reasonableness.'" *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986) (quoting *Strickland*, 466 U.S. 688)). While "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim," demonstrating counsel's incompetence is difficult. *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Mintun*, 144 Idaho at 661, 168 P.3d at 45.

"[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mintun*, 144 Idaho at 661, 168 P.3d at 45 (quoting *Gray*, 800 F.2d at 646). "Had appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance. If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, then the failure was prejudicial." *Gray*, 800 F.2d at 646. In Meister's second direct appeal, appellate counsel solely challenged the district court's limitation of Dr. O.'s testimony. Meister now argues appellate counsel failed to bring three more meritorious claims on direct appeal. Where the claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal, considering whether that failure was a strategic decision, and should compare issues which could reasonably have been raised to those which were raised. *Id.*; *see Dunlap*, 159 Idaho at 297, 360 P.3d at 306.

9

In Meister's second direct appeal, appellate counsel argued the district court erred in limiting Dr. O.'s testimony. Meister argues three other issues were stronger. This necessitates a review of the strength of the issue asserted on appeal. In Meister's second direct appeal, this Court evaluated the merits of the claim and held that even if it was error to limit Dr. O.'s testimony, any error was harmless for two reasons: first, because of the overwhelming amount of evidence supporting a finding of guilt; and second, because the information Meister sought to get before the jury was presented during trial counsel's closing statement. On one hand, this Court presumed error. On the other hand, such error was harmless considering that the information Meister sought to get in front of the jury through Dr. O.'s testimony was presented to the jury in closing argument. Thus, we are left with the impression that this challenge was a fairly debatable issue to raise on appeal.

As noted above, claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *DeRushé*, 146 Idaho at 603, 200 P.3d at 1152.

To show that counsel's deficient performance prejudiced the defendant, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). "This 'requires a substantial, not just conceivable, likelihood of a different result.'" *Id.* (quoting *Cullen*, 563 U.S. at 189). Therefore, when reviewing appellate counsel's performance, we decide whether, but for appellate counsel's errors, a reasonable probability exists that the defendant would have prevailed on appeal. *Robbins*, 528 U.S. at 285; *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Thus, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* The United States

10

Supreme Court has stated, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

To address the propriety of the district court's grant of summary dismissal, we look to each claim of ineffective assistance of appellate counsel to discuss the merits of the omitted claim. This evaluation informs the determination whether appellate counsel's decision to omit the claim was objectively unreasonable and whether, but for appellate counsel's failure to raise the claim, there is a reasonable probability that the result of Meister's second direct appeal would have been different. The three challenged claims are that counsel was ineffective for not pursuing on appeal: (1) error by the district court in allowing evidence concerning Meister's religious beliefs; (2) error by the district court in permitting the jury to learn of Meister's prior trial, grand jury hearing, and incarceration; and (3) the application of federal law to the issue raised in Meister's second direct appeal. We consider the merits of each claim to evaluate whether, if it had been raised, there is a reasonable probability that it would have prevailed on appeal, the standard by which Meister's claim of prejudice is judged.

### a.       Meister's religious beliefs

Meister argues appellate counsel was ineffective for failing to appeal the issue that the trial court erred in admitting evidence of Meister's religion. The evidence Meister references is testimony that a witness, B.K., attended specific religious classes with Meister; that beliefs of the religion might lead to loyalty to each other; improper statements by the prosecutor that Meister, by virtue of his religion, denied the existence of sin, denounced contrition, and regarded the capacity for remorse as a weakness; and an implication that Odinists are white racists.

Ultimately, the record reflects that trial counsel objected, filed a motion in limine to limit the prosecutor's closing argument regarding Meister's religious affiliations, and filed a motion for a new trial based on B.K.'s testimony regarding Meister's religious beliefs, all of which were rejected by the district court. Specific to the motion for a new trial following his guilty verdict, Meister unsuccessfully argued that the evidence regarding B.K.'s and Meister's religious beliefs violated Idaho Rule of Evidence 610.[1]   Meister argued that these statements impermissibly

---

[1]        "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."   Idaho Rule of Evidence 610, however, does not prohibit

11

tainted Meister's character because they implied that due to his religion, he had a deviant moral character; owed a duty of loyalty to other practitioners of the pagan religion; and due to his religious affiliation, he associated with white racists.

A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

"Appeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial." *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000). However, it is not a foregone conclusion that any mention of religion constitutes reversible error. *Bains v. Cambria*, 204 F.3d 964, 974 (9th Cir. 2000) (affirming because error was harmless). Contrary to Meister's assertions, there is no evidence in the record that the prosecutor used testimony regarding the Odinist religion to generalize that all Odinists, and in particular Meister, were predisposed to violence or that they lacked any sense of moral remorse. Further, the record does not show that impermissible generalizations about Odinists were made. *See United States v. Vue*, 13 F.3d 1206, 1212-13 (8th Cir. 1994) (holding a customs agent's testimony about the tendency of Hmong people to smuggle opium into the Twin Cities was reversible error). To the contrary, the record reflects that B.K.'s testimony did not confirm any of the prosecutor's statements which Meister argues were impermissible. For example, the prosecutor asked B.K. if the Odinistic religion denies sin, denounces contrition, and sees repentance as a mark of weakness. B.K. responded that he did not "know about that" but explained that sin was "generally a Christian, Jewish or Muslim belief," and that an Odinist's

---

inquiry into a witness's religious beliefs for purposes of showing interest or bias. *State v. Sanchez*, 142 Idaho 309, 314-15, 127 P.3d 212, 217-18 (Ct. App. 2005).

12

"idea of sin has to do with violating the Nine Noble Virtues"; *i.e.*, courage, truth, honor, discipline, self-reliance, perseverance, fidelity, hospitality, and industriousness.

The record also reflects that in ruling on the objections, the motion in limine and the motion for a new trial, the district court considered the evidence of Meister's religious affiliation under I.R.E. 403 and ruled that the probative value outweighed any prejudicial effect. Idaho Rule of Evidence 403 provides that relevant evidence may be excluded if, in the district court's discretion, the danger of unfair prejudice--which is the tendency to suggest a decision on an improper basis--substantially outweighs the probative value of the evidence. *State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010); *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994); *State v. Nichols*, 124 Idaho 651, 656, 862 P.2d 343, 348 (Ct. App. 1993). A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *Enno*, 119 Idaho at 406, 807 P.2d at 624; *Clark*, 115 Idaho at 1059, 772 P.2d at 266. Placed in context, the testimony involving Meister's affiliation with the Odinist religion conferred a potential bias on the part of a fellow inmate witness called on behalf of Meister. Meister called B.K. to testify regarding the defense theory that an alternative perpetrator, L.T., admitted to B.K. that L.T. had committed the murder. The State then elicited testimony regarding B.K.'s affiliation with Meister. The district court determined that evidence of Meister's affiliation with B.K. was admissible to demonstrate bias; however, pursuant to I.R.E. 610, the district court properly limited the prosecutor's statements regarding any attribution from Meister's religious affiliation to his credibility. Had this issue been raised on appeal, it would not have prevailed. Accordingly, Meister has failed to satisfy the prejudice prong of *Strickland*.

### b. Meister's prior trial, grand jury proceedings, and incarceration

Meister next argues appellate counsel was ineffective for failing to pursue in the second direct appeal the issue that the jury was presented with inappropriate evidence regarding Meister's first trial and conviction. While there was mention of a prior trial and grand jury proceedings, neither was contemporaneously objected to. However, Meister filed a motion for a mistrial regarding the testimony that mentioned the grand jury, which the district court denied. Therefore, had appellate counsel raised this issue on the second direct appeal, Meister would have had to show that the district court abused its discretion in denying his motion for a new trial. *See Egersdorf*, 126 Idaho at 687, 889 P.2d at 121.

13

While "[i]nformation that another panel of impartial jurors has already heard the case against the defendant and concluded, beyond a reasonable doubt, that he is guilty is highly prejudicial," *United States v. Keating*, 147 F.3d 895, 902 (9th Cir. 1998), "Idaho law has clearly distinguished between the mention of a previous trial and the mention of a previous conviction." *State v. Lankford*, 162 Idaho 477, 486, 399 P.3d 804, 813 (2017). In *Lankford*, the district court stated, "There was a prior trial in Idaho County in 1984 for the offenses for which he is now charged. And an Appeals Court held that [the defendant] was not effectively represented and that his trial was therefore unfair." *Id.* The Idaho Supreme Court held that mention of a prior trial and appeal is not "so extremely and inherently prejudicial that the jury is not susceptible to rehabilitation through further questioning." *Id.* As the Idaho Supreme Court stated:

> While the mention of a previous conviction is certainly very damaging . . . the fact that the jury is aware that a defendant is facing a trial for a second time simply does not carry the same weight. . . . The fact that a defendant is being retried, without reference to a defendant's conviction or guilt, is no more prejudicial than the fact that the defendant has been held to answer to a criminal charge.

*Id.* "Such prejudice is not the basis for relief." *Id.* This Court likewise determined that disclosure of a previous trial does not present a situation in which a mistrial is required. *State v. Watkins*, 152 Idaho 764, 768, 274 P.3d 1279, 1283 (Ct. App. 2012). Rather, the proper inquiry is whether any reference to a prior trial was harmless. *Id.*

The record reflects that the district court's pretrial order restricted the language used at trial regarding previous proceedings, requiring that all references to earlier proceedings regarding Meister's offenses related to his case be referred to as "prior proceedings." However, during trial, two witnesses, K.W. and S.M., referred to prior proceedings by using supposed restricted language. Primarily K.W. mentioned the "last trial" and S.M. referenced "the grand jury years ago." Additionally, B.K. testified regarding his association with Meister due to their incarceration together. Meister argues that appellate counsel should have pursued the erroneous admission of this evidence as a violation of Meister's due process rights in his second direct appeal.

In the second trial, Meister filed a motion for a mistrial regarding the testimony that mentioned the grand jury, which the district court denied. The district court ruled that mention of the grand jury and prior trial were not prejudicial and did not deprive Meister of a fair trial. On appeal, Meister does not make any reference to the denial of his motion for a mistrial. Rather, he argues he was clearly prejudiced. While the statements may have been prejudicial,

14

the prejudice Meister is required to show on a claim of ineffective assistance of appellate counsel in post-conviction is that had this issue been raised in Meister's second direct appeal, his judgment of conviction would have likely been reversed.

Taken in context, the statements made by the witnesses were not as prejudicial as Meister asserts. The witnesses did not remember the exact answers to the questions and therefore referenced their prior testimony. K.W. answered in response to how long it took him to call 911, "I've been asked this many times, and it was difficult to determine. But in the last trial, I stated it was from five to six minutes. And that still seems reasonable to me." This statement was made on the sixth day of a four-week trial. On the seventh day of trial, S.M. testified that he had told "the grand jury years ago" about his encounter with the person who paid Meister to commit the murder shortly after S.M. was informed of the death. Finally, on day twenty-one of trial, as the State was exploring the potential bias of B.K., it was established that Meister and B.K. were previously incarcerated together. The aggregate of these three references made over the span of four weeks did not rise to the level of conveying to the jury the message that Meister had been previously convicted of the offenses for which he was currently standing trial.

Similar to the statements in *Lankford* regarding a prior trial and an appeal, here, the statements regarded a prior grand jury hearing and trial. As the Court determined in *Lankford*, these references, in the absence of any reference to conviction or guilt, were "no more prejudicial than the fact that the defendant has been held to answer to a criminal charge." *Lankford*, 162 Idaho at 487, 399 P.3d at 814.[2] Therefore, we next determined whether reference to the prior trial was harmless.

The statements were brief, made over the course of a four-week trial. Neither the State nor defense counsel referenced the previous trial or grand jury hearings again. The district court correctly determined the testimony did not deprive Meister of a fair trial. Had this issue been raised in the second direct appeal, it would not have prevailed. Accordingly, Meister failed to satisfy the prejudice prong of *Strickland*.

---

[2] While there was testimony regarding Meister's prior conviction, the statements were elicited by Meister's counsel from a defense witness. Therefore, in order to demonstrate error, Meister was required to demonstrate that although the error potentially was invited, it nevertheless required reversal. *State v. Abdullah*, 158 Idaho 386, 420-21, 348 P.3d 1, 35-36 (2015). Meister has failed to do so.

### c.     Meister's federal claim

Last, Meister claims appellate counsel was ineffective for failing to "federalize" the issue actually raised in his second appeal; *i.e.*, the district court erred in limiting Dr. O.'s testimony in light of state law. Meister argues that counsel was ineffective because had counsel raised the issue in light of federal authority, the outcome likely would have been different. Meister also argues that appellate counsel's failure foreclosed the possibility of raising the claim in a federal habeas corpus petition. The State argues that Meister has failed to show federal claims regarding this issue were preserved for appellate review, that Meister failed to show there was a federal constitutional right to present evidence regarding his credibility, and that he failed to demonstrate prejudice.

Meister argues generally that he has the constitutional right under the Fourth, Fifth, Sixth, and Fourteenth Amendments to present a defense. Meister provides no argument to demonstrate how he was denied this right or that he was, in fact, denied this right. As noted above, counsel was able to present the defense during closing argument that Meister was attempting to introduce through Dr. O, which was that applying Dr. O.'s testimony regarding false confessions to the case at hand rendered Meister's confession false. Therefore, without more, it is unclear how counsel was deficient. In addition, Meister provides no argument to support the prejudice prong of *Strickland*. Meister merely states had counsel argued under federal authority, the outcome likely would have been different. Bare and conclusory statements do not overcome the fairly low threshold of summary dismissal.

Meister's only prejudice argument is that the failure to "federalize" the issue asserted on direct appeal limits his access to federal habeas corpus proceedings because it represents a failure to exhaust state remedies. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (sets forth the rule of exhaustion generally). Therefore, Meister argues, because counsel failed to raise his claim in light of federal authority, he is unable to bring a collateral review in federal court regarding the limitation of Dr. O.'s testimony.

A federal court will "entertain an application for habeas corpus" "on the ground that he is in custody in violation of the Constitution" only after the "applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.A. § 2254 (West. 1996). Thus, in order for an applicant to seek collateral review in federal court of an alleged error that took place within the state court, he must first assert the grounds of the constitutional violation in state court.

Generally, to demonstrate prejudice in a post-conviction petition, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. In certain instances, counsel's actions are per se prejudicial even without a showing that defendant could have prevailed on that appeal. *Beasley v. State*, 126 Idaho 356, 361, 883 P.2d 714, 719 (Ct. App. 1994) (failure to file a requested appeal that the defendant may take as a matter of right). Meister apparently assumes, without citing any authority, that a presumption of prejudice would likewise apply to the loss of an opportunity to seek habeas corpus relief in the federal courts. We need not reach that issue, however, because we conclude that Meister has not shown that he is foreclosed from pursuing a federal habeas corpus action.

First, a party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Meister's bare and conclusory statement that under federal authority the outcome likely would have been different and that counsel's failure to present federal authority "has resulted in a procedural bar" does not satisfy the prejudice prong of *Strickland*. Thus, the district court correctly ruled that Meister did not present a genuine issue of material fact that, if resolved in his favor, entitled him to relief for ineffective assistance of appellate counsel. Therefore, the district court's dismissal of these claims was proper.

Moreover, to properly exhaust a habeas corpus claim, the petitioner must "invoke[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This provides the state courts a full and fair occasion to correct any alleged constitutional error at the appellate level of review. *See Baldwin*, 541 U.S. at 29. A claim is deemed "procedurally defaulted" if it is not properly exhausted. There are three circumstances in which a claim is considered to have been procedurally defaulted when: (1) the petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) the petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001).

Typically, if a claim is procedurally defaulted, the federal district court will not hear the merits of the claim. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S.

478, 488 (1986).  However, a federal court may consider a claim if the petitioner can show: (1) an adequate legal cause for the default and prejudice arising from the default; or (2) actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court.  *See Schlup*, 513 U.S. at 329; *Murray*, 477 U.S. at 504.

Accordingly, the failure to fully and fairly present a claim as a federal claim, while potentially a procedural default, is not an absolute bar to federal habeas corpus proceedings. Furthermore, Meister provides no authority or argument that failure to do so constitutes ineffective assistance of counsel both in deficient performance and more importantly in prejudicial effect.  In a post-conviction proceeding regarding appellant counsel's assistance, the petitioner is required to show that the claim not asserted was clearly stronger than the one asserted.  Meister has failed to present any argument regarding the strength of his constitutional claim.  Additionally, a petitioner must show that had counsel raised the omitted claim, success was likely.  As noted above, Meister presents a bare and conclusory statement that under federal authority the outcome likely would have been different and that counsel's failure to present federal authority "has resulted in a procedural bar."

The district court correctly ruled that this bare and conclusory claim did not present a genuine issue of material fact that, if resolved in his favor, entitled Meister to relief for ineffective assistance of appellate counsel.  Therefore, the district court's dismissal of this claim was proper.

### 2.    Trial counsel

Meister next argues his trial counsel's representation was objectively unreasonable and prejudicial to Meister's defense in five instances:  (1) failing to present evidence that Meister's confession was false; (2) failing to present alibi evidence; (3) failing to present evidence of an alternative perpetrator; (4) failing to challenge certain evidence and alleged instances of prosecutorial misconduct; and (5) erroneously introducing inculpatory evidence but failing to introduce exculpatory evidence.[3]

---

[3]    In general, Meister argues counsel was ineffective in the second trial because counsel did not use the same strategy and evidence as was presented and used in the first trial.  Meister then recounts in detail the various testimonies presented in both the first and second trials and explains that counsel was ineffective in not presenting testimony from the first trial in the second trial, even though his defense in the first trial was unsuccessful.

This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales*, 151 Idaho at 172, 254 P.3d at 73. Strategic decisions can include counsel's choice of witnesses, presentation of evidence, manner of cross-examination, and lack of objection to testimony. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). "Because of the distorting effects of hindsight in reconstructing the circumstances of counsel's challenged conduct, there is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance--that is, 'sound trial strategy.'" *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct. App. 1989) (quoting *Strickland*, 466 U.S. at 689). The constitutional requirement for effective assistance of counsel is not the key to the prison for a defendant who can dredge up a long series of examples of how the case might have been tried better. *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992); *Thomas v. State*, 145 Idaho 765, 770, 185 P.3d 921, 926 (Ct. App. 2008).

### a. Evidence that Meister's confession was false

Meister argues that defense counsel made a sound strategic decision to challenge the truth of Meister's confession, but nonetheless failed to present that defense reasonably and competently. Meister highlights inconsistencies between his confession and the evidence not presented at trial. The inconsistencies relied on were contained within Dr. O.'s report, which was not admitted into evidence at either the 2003 or the 2011 trial. Therefore, Meister argues, defense counsel was ineffective for failing to present the evidence in order to highlight the inconsistencies between the confession and the evidence. Essentially, Meister's argument boils down to second-guessing trial counsel's tactical and strategic decisions during the second trial and listing the various ways in which counsel could have better tried the case.

The district court determined that defense counsel tactically forwent evidence that the confession was false in order to focus on two other defense theories, an alternative perpetrator theory and a defense that the confession was coerced, and ultimately ruled that Meister failed to raise a genuine issue of material fact that counsel's tactical decisions fell below an objective standard of reasonableness.

The decision of what evidence should be introduced at trial is a tactical decision. *Bagshaw v. State*, 142 Idaho 34, 38, 121 P.3d 965, 969 (Ct. App. 2005). When faced with a

19

tactical decision, this Court utilizes the strong presumption that the decision fell within the acceptable range of choices available to trial counsel. *State v. Yakovac*, 145 Idaho 437, 447, 180 P.3d 476, 486 (2008). Meister does not direct this Court to evidence in the record that would support an inference that trial counsel's decision was not "tactical or strategic." Rather, he simply contends that because the confession was the cornerstone of the State's case and the most "damning evidence" against Meister, failure to present persuasive evidence to dispute the confession amounted to an abandonment of the only realistic chance the jury would find reasonable doubt.

Meister contends the district court's ruling is not supported by a balanced view of the facts. The majority of the evidence relied upon by Meister goes to testimony in which the jury was required to determine the credibility of each witness. Meister relies on various testimonies from the first trial, which were not presented at the second trial, and thus were not facts in the case at hand. Further, Meister ignores trial counsel's closing argument in which he emphasized the contradictions in Meister's actual confession vis-a-vis the trial evidence. For example, that Meister claimed to see a police vehicle on a road while fleeing when, in fact, no police vehicle was on that road; that Meister confessed to throwing away the bullets as he fled, yet several witnesses testified that Meister offered to give them bullets in the following days; and that Meister claimed he discarded his clothes in the field, yet no clothes were ever found. Counsel then concluded by arguing to the jury, "the circumstances offered by [Dr. O.] that provide for, create the circumstances of a false confession." *Meister*, Docket No. 39807. Last, Meister ignores the fact that counsel had the hindsight of the previous trial in which to make tactical and strategic decisions upon which to base its defense. Essentially, Meister's argument boils down to second-guessing trial counsel's tactical and strategic decisions during the second trial and listing the various ways in which counsel could have better tried the case. Meister provides no evidence which suggests that counsel's decisions resulted from inadequate preparation, ignorance of the law or other shortcomings. Therefore, the presumption that counsel's performance fell within the acceptable range of competent assistance leads us to conclude that trial counsel's tactical decisions relating to the introduction of evidence regarding the false confession defense fell within the objectively reasonable range. The district court properly determined Meister failed to present a prima facie case that defense counsel's representation in pursuing the defense of a false confession was unreasonable and incompetent.

20

### b. Alibi evidence

Meister next contends counsel made a showing of an alibi; however, counsel failed to present additional evidence to bolster his alibi. Specifically, Meister argues trial counsel unreasonably omitted evidence that would have reinforced Meister's alibi time frame and shown that he could not have committed the murder. The decision of what evidence should be introduced at trial is a tactical decision. *Bagshaw*, 142 Idaho at 38, 121 P.3d at 969. When faced with a tactical decision, this Court utilizes the strong presumption that the decision fell within the acceptable range of choices available to trial counsel. *Yakovac*, 145 Idaho at 447, 180 P.3d at 486.

Meister simply points to testimony from the 2003 trial and contends that, essentially, counsel was ineffective for not using the evidence from the earlier trial. For example, in the first trial, an employee at the pizza store, R.G., testified that J.L. left the store around 10:30 p.m.; that J.L. called around 11 p.m., prompting the store to stop answering the phone and start closing; and that the store began operating again once the manager, T.S., called informing employees he would come to fill in. Meister argues this information would have been probative as to whether Meister's roommate, J.W., made a phone call, which was not answered, to the pizza store around 11 p.m. In addition, Meister argues that a witness, J.R., whom Meister and J.W. testified to seeing in the parking lot when they retrieved a pizza, was not called to testify in the second trial. Meister speculates as to what J.R. would have testified to based on interviews that were not introduced at trial and contends that the testimony would have corroborated Meister's testimony regarding his whereabouts the evening of the murder.

At the second trial, trial counsel presented evidence to establish Meister's whereabouts at the time of the shooting, which took place around 10:15 p.m. The evidence counsel presented consisted of J.W.'s testimony that Meister was home sometime between 9:30 p.m. and 11 p.m. when J.W. asked Meister if he wanted pizza, that J.W. saw Meister sometime before 11 p.m. when he told Meister he called for pizza but no one answered, and that J.W. and Meister then drove to another pizza place to get pizza. Meister's testimony corroborated J.W.'s testimony. In addition, one witness, H.H., testified that she also called the pizza place around 11:05 p.m. and did not receive an answer. Another witness, J.Y., testified that right before she drove out to the scene of the murder, she saw Meister at home close to 11 p.m. and that Meister and J.W. had just

finished a pizza. Last, Detective H. testified that J.Y. arrived at the scene of murder at approximately 11:40 p.m.

Meister has provided no evidence which suggests that counsel's decisions resulted from inadequate preparation, ignorance of the law, or other shortcomings. Rather, Meister's argument boils down to second-guessing trial counsel's tactical and strategic decisions during the second trial and listing the various ways in which counsel could have better tried the case. Therefore, the presumption that trial counsel's performance fell within the acceptable range of competent assistance leads us to conclude that failing to introduce additional alibi evidence did not fall below an objective standard of competence. The district court properly determined Meister failed to present a prima facie case that defense counsel's representation in pursuing the alibi defense was objectively unreasonable.

### c.       Evidence of an alternative perpetrator

Meister next argues that while trial counsel made a reasonable strategic choice to pursue the alternative perpetrator defense, trial counsel nonetheless neglected to "present that defense reasonably and competently." Meister maintains additional evidence existed consisting of an interview of a potential witness, J.R., and an interoffice memorandum and affidavit regarding another possible witness, L.R., that, in Meister's opinion, would have "foreclosed the argument that [L.T.] implicated himself in the murder to impress fellow inmates while incarcerated."

The decision of what evidence should be introduced at trial is a tactical decision. *Bagshaw*, 142 Idaho at 38, 121 P.3d at 969. When faced with a tactical decision, this Court utilizes the strong presumption that the decision fell within the acceptable range of choices available to trial counsel. *Yakovac*, 145 Idaho at 447, 180 P.3d at 486. Meister cites to a Ninth Circuit case regarding failure to present evidence that counsel had access to which would have provided a more robust alibi. *Alcala v. Woodford*, 334 F.3d 862, 870-71 (9th Cir. 2003).

In *Alcala*, the evidence counsel introduced could not specifically place the defendant at a specific location on the day of the incident. The evidence which counsel failed to present placed the defendant at a specific location on the day of the incident and at the time of the alleged crime. The Ninth Circuit determined that the district court's finding that the evidence not presented would have been more helpful than the alibi witness who testified was not clearly erroneous and that a "competent attorney would have presented this evidence unless the attorney was unaware of its existence or had a reasonable strategic reason for not doing so." *Id.* at 871.

22

Unlike the alibi evidence in *Alcala*, a review of the record in this case does not establish that the additional testimony from J.R. and L.R. would have placed Meister at a specific location during the time of the murder, nor would it have placed the alternative perpetrator, L.T., at the murder scene. Rather, the additional evidence consisted of hearsay from two witnesses that L.T. informed them that he had killed someone. However, in J.R.'s interview, he is inconsistent with what L.T. said and does not establish that L.T. did not have reason to lie. Further, the memorandum and affidavit from L.R. consists entirely of hearsay from L.T. and from other people who believed L.T. had committed the murder. A thorough review of the evidence Meister argues should have been introduced reveals that, contrary to Meister's argument, the evidence would not have foreclosed the argument that L.T. had reason to lie about his involvement in the murder. To the contrary, the evidence not presented shows that J.R. and L.R. provided inconsistent and nonconclusive statements.

Meister has provided no evidence which suggests that counsel's decision to not present this evidence resulted from inadequate preparation, ignorance of the law, or other shortcomings. Here, trial counsel introduced evidence regarding an alternative perpetrator who (1) matched the physical description of the person seen shortly after the murder, walking on the highway near the home where the murder occurred; (2) matched a witness's description of the person seen on the highway around the time the murder took place; (3) confessed to a robbery of the house where the murder occurred; (4) testified to discarding a stolen briefcase near the crime scene, which was later found; (5) had the foot size which matched the shoe prints found at the scene; and (6) confided in a fellow inmate that he had been the one who killed the victim. We stress again that the constitutional requirement for effective assistance of counsel is not the key to the prison for a defendant who can dredge up a long series of examples of how the case might have been tried better. *Ivey*, 123 Idaho at 80, 844 P.2d at 709; *Thomas*, 145 Idaho at 770, 185 P.3d at 926. Therefore, the presumption that trial counsel's performance fell within the acceptable range of competent assistance leads us to conclude that failing to introduce additional alternative perpetrator evidence did not fall below an objective standard of competence. The district court properly determined Meister failed to present a prima facie case that defense counsel's representation in pursuing the alternative perpetrator defense was objectively unreasonable.

23

### d. Defense counsel's failure to object

Meister next argues trial counsel was ineffective for failing to object to various improper testimonial evidence and statements made by the prosecutor which constituted prosecutorial misconduct. We will address each in turn.

### i. Improper testimonial evidence

The improper testimonial evidence includes: (1) undisclosed testimony by a witness; (2) improper questioning regarding Meister's religion; (3) improper cumulative evidence; and (4) introduction of evidence suggesting Meister's criminal tendencies.

### (a) Undisclosed testimony

First, Meister argues trial counsel was ineffective for failing to object to and moving to strike the undisclosed testimony of a police officer, S.M., regarding J.L.'s emotional state the night of the murder.[4] The State responds that Meister has failed to provide argument or authority on appeal and merely provides a conclusory statement that the district court erred. The district court dismissed this claim because it determined that even if an objection would have been raised, it would not have been sustained.

From what we can glean from the record, primarily from Meister's declaration in support of second amended petition for post-conviction relief, during his second trial the State introduced the testimony of S.M. who had interviewed J.L. S.M. testified regarding J.L.'s lack of emotion on the evening of the murder. Trial counsel did not object to this testimony; however, counsel did file a "Motion for Mistrial; Motion in Limine" the following day, relying on I.C.R. 16(b)(2).[5] Meister then requested that trial counsel amend the motion to include what he considered to be the proper rule, I.C.R. 16(b)(6).[6] As relayed by Meister, trial counsel responded he would

---

[4] The State's theory was that the victim's boyfriend, J.L., contracted Meister to kill the victim.

[5] Idaho Criminal Rule 16(b) provides in part:

> (2) On written request of a defendant, the prosecuting attorney must permit the defendant to inspect and copy or photograph:
> (A) any written or recorded statements of a co-defendant; and
> (B) the substance of any relevant oral statement made by a co-defendant, whether before or after arrest, in response to interrogation by any person known by the co-defendant to be a peace officer or agent of the prosecuting attorney.

[6] Idaho Criminal Rule 16(b)(6) provides:

24

"consider the request"; however, did not include the alternative rule in the motion. The district court denied the motion because I.C.R. 16(b)(2) did not require disclosure.

Meister maintains this testimony was one of the most important pieces of evidence offered to prove J.L.'s motive and that despite discovery being requested, this information was not disclosed prior to trial. Thus, Meister argues that under I.C.R. 16(b)(6), the State was required to disclose the substance of S.M.'s testimony and had trial counsel objected to the testimony, the court would have sustained the objection. This argument ignores the district court's determination that it would not have sustained the objection. Meister provides no authority or argument regarding why a different ruling on the motion would have been likely. Without anything further, Meister has failed to demonstrate prejudice or deficient performance. In addition, there is no evidence that the district court would have sustained the objection or granted a motion to strike the testimony based upon the alternate rule raised by Meister now on appeal. Therefore, Meister has also failed to demonstrate prejudice. Accordingly, Meister has failed to demonstrate the district court erred in summarily dismissing the claim that counsel was ineffective for failing to object to the officer's testimony.

### (b)    Questioning regarding religion

Meister next argues counsel was ineffective for not objecting to questions regarding Meister's religious beliefs posed to a witness, B.K., who was incarcerated at the same time as Meister.[7] Meister argues that the questioning served no purpose except to appeal to religious prejudices and inflame the passions, fears, and vulnerabilities of the jury. The State argues the questioning was proper as an attempt to establish bias and, alternatively, that the resulting evidence was not prejudicial. Meister depicts the questioning as the State asking, "Isn't it true that the Odinistic belief is that sin is denied and contrition denounced, that Odinists see repentance as a mark of weakness?" and that Odinists lack normal notions of morality such that

> The prosecuting attorney must also furnish, on written request, the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney's agents or to any official involved in the investigation of the case unless a protective order is issues as provided by subsection (l) of this rule.

[7]    This claim corresponds with Meister's claim that appellate counsel was ineffective for failing to appeal the issue that the trial court erred in admitting evidence of Meister's religion discussed previously in Section A.1.a.

"Odinism doesn't see repentance--or sees repentance as a mark of weakness?" This does not present the entirety of the exchange, which went as follows:

Q:      And isn't it true that that the Odinistic belief is that sin is denied and contrition is denounced, that Odinists see repentance as a mark of weakness?

A:      I don't know about that. I don't remember that, but I haven't really--I've kind of drifted away from it a little bit over the years. So . . . But I mean, the typical idea of, like, sin and stuff like that is--that's generally a Christian belief or Muslim or Jewish, you know. It's--and Odinism is a pagan religion so their idea of sin has to do with violating the Nine Noble Virtues . . . .

. . . .

Q:      . . . Isn't it true that the fact that you're testifying on behalf of [Meister] is going to look well with all those that are in the Odinistic faith?

A:      Well, first of all, there's--you know, there are crimes in prison that have no honor. One of those is killing a defenseless girl, okay. So if--if they believe that he did it and they believe that I was helping him get away with it, there's no honor in that. So, that wouldn't help me at all.

Q:      But, of course, Odinism doesn't see repentance--or sees repentance as a mark of weakness?

A:      Well, that's--I don't know about that.

The State then moved onto other questions. Contrary to Meister's assertion, this entire exchange supports the district court's determination that the State properly attempted to establish bias through this line of questioning rather than implying that Meister and B.K. were "undesirables and less credible by virtue of their religion" as argued by Meister.

Moreover, after the trial, Meister moved for a new trial on the basis that the evidence of his religion violated Idaho Rule of Evidence 610. The motion was denied. Therefore, based on the district court's ruling that such evidence was admissible to prove bias and the denial of the motion for a new trial, Meister has failed to demonstrate that had counsel objected to this line of questioning, the outcome of the trial would have been different. Thus, Meister has failed to demonstrate the district court erred in summarily dismissing the claim that counsel was ineffective for failing to object to the testimony regarding his religious beliefs.

### (c)      Cumulative evidence

Meister also argues that the State used cumulative evidence to improperly buttress the credibility of police officers. Meister points to the rebuttal testimony of the interrogating officers, K.H. and E.W., which Meister claims was identical to prior testimony given during the State's case-in-chief, arguing that this gave the State an unfair advantage of repeating its

26

evidence and should have been excluded under I.R.E. 403. Idaho Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The determination of whether relevant evidence is substantially outweighed by the other considerations set forth in I.R.E. 403 is within the discretion of the trial court. *State v. Winn*, 121 Idaho 850, 853, 828 P.2d 879, 882 (1992); *Enno*, 119 Idaho at 405, 807 P.2d at 623. Meister provides no argument regarding how the probative value of such testimony was significantly outweighed by unfair prejudice. Rather, he argues that failure to object served no objectively reasonable strategy. This ignores the fact that part of an effective trial counsel's duty is to determine appropriate challenges and to avoid those which are either unlikely to be granted or to avoid objecting overzealously. It would not be effective or efficient for counsel to object to the introduction of every piece of evidence or testimony as a precaution that failing to do so would be challenged in a post-conviction proceeding, especially if the evidence was not unduly prejudicial as it was here. As such, Meister has failed to demonstrate that such evidence would have been excluded had counsel objected. Further, Meister has failed to demonstrate that a reasonable attorney would have objected. Therefore, Meister has failed to present a prima facie case that counsel was ineffective for not objecting to the rebuttal evidence of K.H. and E.W.'s testimony regarding Meister's confession, and the grant of summary dismissal of this claim was not error.

### (d)     Criminal tendencies

Next, Meister argues that trial counsel was ineffective for failing to object to the prosecutor's questioning, which yielded evidence suggesting Meister possessed criminal tendencies. This included testimony regarding Meister's anti-social behavior, opinion testimony that Meister was guilty, and Meister's continued violation of prison rules. The State argues the questions which elicited these responses were not improper, and therefore counsel was not deficient for not objecting. The district court ruled that Meister failed to show that failure to object to or move to strike the questions by the prosecutor fell below the objective standard of effective counsel or that the outcome of the case would have been different had counsel objected to the testimony.

Meister first argues that testimony elicited from a friend and State witness, D.S., provided improper evidence of Meister's anti-social behavior and opinion testimony that Meister was guilty. The prosecutor's questioning that led to the challenged evidence began with, "You didn't tell [the officer] about this exchange you had with [] Meister following [the] murder, did you, about saying that he did it?" D.S. responded:

> It's possible I did not remember it at that moment. I was in such a state of shock that I gave him as much information as I could remember. My mind--I was just going, reeling through my memories, trying to remember everything I could. Like, I heard he confessed to doing it, which was completely out of the character I knew him to be.
>
> Over the course of the years I knew him, he was the kind of person that would try to get away with stuff. And he trusted me to tell me what it was that he was doing. And for him to confess to something said to me that he must have done it.

The prosecutor then inquired, "[W]hat--why were you talking with [the detective]?" D.S. explained that he remembered that one night during the week of the murder, Meister came home wearing all dark clothes. D.S. asked Meister where he was going, to which Meister responded, "[G]oing to take care of some dirty business . . . you don't want anything to do with it." As a follow up, the prosecutor asked if this response was unusual. D.S. responded, "That was an unusual thing for him to say because he--he had trusted me, and he would--he would go out and do mischievous things, and he would tell me about it, shooting paint balls at houses. He would tell me about it." The prosecutor interrupted D.S., asking if those were the type of things Meister would tell D.S. D.S. responded, "He told me about stuff. So, for him to say he's taking care of some dirty business, and I don't want to know anything about it said to me, that's on another level of just light vandalism or mischief or the types of things."

Next, Meister points to an exchange between the prosecutor and an inmate witness, B.K., regarding what Meister claims to be an inappropriate implication that he continuously fails to abide by prison rules. The exchange went as follows:

> Q: And so, [Meister's] also tattooing in prison, isn't he?
> A: He could have been, but I didn't know if he was. So . . . .
> Q: Did you get a tattoo from him?
> A: No.
> Q: Do you know people that did?
> A: No. I didn't know that he was tattooing, if he was. So . . . .

Regarding D.S.'s testimony, the statements may have implied that Meister was anti-social or prone to criminal tendencies. However, more important and relevant, they provided

28

foundation of the relationship between Meister and D.S. Regarding the testimony about tattooing, it does not imply that Meister broke prison rules. Rather, it shows that to B.K.'s knowledge, Meister obeyed prison rules. However, both lines of questioning could theoretically have been viewed as painting a negative picture of Meister. Thus, while the lines of inquiry and the statements made in response may have been improper, nonetheless, we must consider the statements within context. It is the burden of the petitioner to show both deficient performance and prejudice.

In essence, Meister is arguing that improper Rule 404(b) evidence was introduced. Idaho Rule of Evidence 404(b) provides, "Evidence of a person's character or trait of character is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." To determine the admissibility of evidence under Rule 404(b), the court employs a two-step analysis. *State v. Salinas*, 164 Idaho 42, 44, 423 P.3d 463, 465 (2018); *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014). "First, the evidence 'must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant.'" *Russo*, 157 Idaho at 308, 336 P.3d at 241 (quoting *State v. Pepcorn*, 152 Idaho 678, 688, 273 P.3d 1271, 1281 (2012)). Second, the court must conduct a Rule 403 analysis to ensure that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. *Russo*, 157 Idaho at 308, 336 P.3d at 241; I.R.E. 403.

Meister omits reference to the applicable inquiry which both the court and counsel would engage in when determining whether evidence should be introduced or objected to. Nor has Meister provided argument that this evidence, taken in context, was required to be omitted or that had this evidence been excluded, a different outcome at trial would have resulted. While trial counsel could potentially have moved to strike the alleged improper statements, Meister has not shown that failure to do so was not a strategic decision on the part of counsel to not call further attention to the statements made. Therefore, Meister has failed to demonstrate the first prong of *Strickland*. Additionally, there is no evidence that had trial counsel objected to the above portions of testimony, and that if the evidence was excluded, a different result would have occurred. Thus, Meister has failed to demonstrate prejudice. Accordingly, Meister has failed to show that the district court erred in summarily dismissing this claim.

29

### ii.     Improper statements by prosecutor

The alleged prosecutorial misconduct includes:  (1) an improper assault on Meister's credibility; (2) improper argument that officers' testimony was more reliable than Meister's version of the events; (3) improper statement that Meister lied to conform his testimony to Dr. O.'s testimony; and (4) improper closing argument regarding Meister's trial rights.

### (a)     Statement about Meister's credibility

Meister argues trial counsel was ineffective for failing to object to an improper assault on Meister's credibility during the prosecutor's closing argument.  The State argues the statement was proper and the claim is frivolous.  The district court ruled that Meister failed to demonstrate both deficient performance and prejudice.  The court noted that counsel is given considerable latitude in closing argument and that decisions to object during closing arguments are tactical and will not be second-guessed on appeal.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case.  *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007).  Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence.  *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991).  Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom.  *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Generally, closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused.  *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *see also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985).  A prosecuting attorney may, however, express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence.  *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1.  Nonetheless, the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial.  *Id.*  The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether.  *Id.*

In challenging the prosecutor's closing argument, Meister cites to this portion:

[Meister] takes the witness stand with everything to gain by lying, he says he didn't do it. He wants you to believe he's now telling the truth. That's all backwards.

There's not--there is so much to say, there were so many contradictions, so much that is unbelievable in [Meister's] testimony, I cannot possibly address it all . . . .

. . . .

. . . [Meister] was confusing. He was all over the map. He rambled, was inconsistent and he was unbelievable.

He had lots of time to come up with his trial testimony, and this was the best he could do.

A review of the record shows nearly twenty pages of the transcript in which the State refers to some of the most significant points, drawn directly from testimony and evidence introduced at trial, that supports the State's assertions in closing argument. It is far from clear that an objection to this closing argument would have been sustained because the prosecutor's closing argument, as a whole, concerning the truth or falsity of Meister's testimony was based on the evidence presented at trial. Therefore, Meister has failed to show prejudice. Accordingly, Meister has failed to show the district court erred in summarily dismissing this claim.

### (b)     Statement regarding law enforcement

Meister next argues that the State improperly declared that Meister had more incentive to lie than police officers. Essentially, Meister contends that the prosecutor's statement implied that in order for the jury to find Meister not guilty, it would have to conclude that the officers were lying. The State argues Meister's argument is facially frivolous, and therefore counsel was not ineffective for refraining from making an objection. The district court ruled that Meister failed to demonstrate both deficient performance and prejudice. The court noted that counsel is given considerable latitude in closing argument and that decisions to object during closing arguments are tactical and will not be second-guessed on appeal.

Meister misinterprets the prosecutor's closing argument. Counsel should not vouch for the credibility of an officer, as it gives the imprimatur of the State. *See State v. Gross*, 146 Idaho 15, 20, 189 P.3d 477, 482 (Ct. App. 2008). However, prosecutors may "explain how, from their own perspectives, the evidence confirms or calls into doubt the credibility of particular witnesses." *State v. Ehrlick*, 158 Idaho 900, 928, 354 P.3d 462, 490 (2015). Here, the prosecutor did not state an opinion regarding the truth or falsity of Meister's testimony. Nor did the prosecutor make reference to the credibility of the officer. Rather, the prosecutor stated, "It's

31

too bad [the entire] interview wasn't recorded. But that doesn't mean that you can't weigh the testimony of [the officers] against that of [Meister]. That's within the province as jurors to do so." The State did not use inflammatory speech to discredit Meister, or state its opinion as to who to believe. Rather, it left the question of credibility up to the jury to decide, as was proper. Thus, failure to object to this statement was not deficient performance by trial counsel. Additionally, Meister has not shown that an objection to this closing argument would have been sustained. Therefore, Meister has failed to show a prima facie case of deficient performance or prejudice. Accordingly, Meister has failed to show the district court erred in summarily dismissing this claim.

### (c) Meister's tailoring of his testimony

Meister next argues that trial counsel was ineffective for failing to object to the prosecutor's statement that Meister lied in order for his testimony to conform to the theories presented by Dr. O. The State argues the record reflects the prosecutor's closing argument was based on the evidence presented at trial. The district court ruled that Meister failed to demonstrate both deficient performance and prejudice. The court noted that counsel is given considerable latitude in closing argument and that decisions to object during closing arguments are tactical and will not be second-guessed on appeal.

As stated above, a prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. Here, the prosecutor's statement was based on the evidence. The prosecutor cross-examined Meister extensively regarding the falsity of Meister's confession, relying on numerous differences between his prior testimony and current testimony. Additionally, the prosecutor relied on other recorded statements regarding his claim that his testimony was false. Further, Meister bears the burden of demonstrating that the objection would likely have been granted and had counsel objected to the statement, the outcome of the trial would have been different. Meister fails to do either. Rather, he conclusively states that counsel's failure to make an objection, which likely would have been sustained, was objectively unreasonable and was prejudicial. Therefore, Meister has failed to show a prima facie case of deficient performance or prejudice. Accordingly, Meister has failed to show the district court erred in summarily dismissing this claim.

### (d)      Statement regarding trial rights

Last, Meister argues trial counsel was ineffective for failing to object to the prosecutor's statement in closing argument regarding Meister's trial rights.[8]  Meister argues because a similar comment was made in the 2003 trial, counsel was on alert that such a comment would be made, and argues that this comment essentially implied that Meister was undeserving of his due process trial rights.  In support, Meister simply states that the failure offered no strategic advantage and constituted ineffective assistance of counsel.  The State argues the statement made by the prosecutor was not objectionable and additionally that Meister has failed to present any evidence that the failure to object was based on any objective shortcoming or that Meister was prejudiced.  The district court ruled that Meister failed to demonstrate a prima facie case as to both deficient performance and prejudice.  The court noted that counsel is given considerable latitude in closing argument and that decisions to object during closing arguments are tactical and will not be second-guessed on appeal.

The right to effective assistance extends to closing arguments.  *Grove v. State*, 161 Idaho 840, 863, 392 P.3d 18, 41 (2017).  However, wide latitude is given to counsel in deciding how best to represent a client, with significant deference given to counsel's tactical decisions regarding closing argument because of the broad range of legitimate defense strategy at that stage.  Closing argument should "sharpen and clarify the issues for resolution by the trier of fact," *Phillips*, 144 Idaho at 86, 156 P.3d at 587, but which issues to sharpen and how best to clarify them are questions with many reasonable answers, best left for counsel to decide.  *Grove*, 161  Idaho  at  863,  392  P.3d  at  41.      Indeed,  it  might  sometimes  be  best  to

---

[8]      The statement was:

> Now, the defendant is entitled to many rights, the presumption of innocence, a trial by jury.  The Court carefully reviews evidence to make sure everything you hear is proper for your consideration; that it's relevant; that it's not overly prejudicial.  It's a very careful process, and it should be.  It's designed to carefully protect the rights of the defendant.  And that's what we in our society want.
>
> However, [the victim] had no such process.  The defendant didn't give her any presumptions or protections.  With two shots, he acted as her judge, jury and executioner without due process of law.  But this time it's different because you can stop him.  It's unpleasant--as unpleasant and difficult as it can be to render judgment, to look this defendant in the eye and say he's guilty, that's what the evidence compels you to do.

forgo closing argument altogether, therefore judicial review of a defense attorney's decisions during closing argument is highly deferential. *State v. Abdullah*, 158 Idaho 386, 508, 348 P.3d 1, 123 (2014).

Contrary to Meister's assertion, the prosecutor did not state that Meister did not deserve a fair trial because he did not give a fair trial to his victim. Rather, the prosecutor stated that society wants Meister to have a fair trial, which he was afforded. Considering the entire statement in context, the record reflects that the prosecutor's closing argument pointed to the evidence in asking for a conviction.

Accordingly, the district court did not err in finding that decisions made by trial counsel during closing argument "fell within the wide range of reasonable professional assistance," and that there was no prejudice. "[A]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct." *Grove*, 161 Idaho at 863, 392 P.3d at 41 (quoting *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013). Even if the statement was objectionable, Meister has not presented any evidence counsel's failure to object was not strategic. Meister also failed to prove there was no reasonable probability that the outcome of the case would have been different had trial counsel objected. Therefore, Meister has not demonstrated that the district court erred in dismissing this claim.

### e. Inculpatory evidence

Meister next argues trial counsel was ineffective on two occasions for introducing inculpatory evidence yet failing to present exculpatory evidence. The State argues Meister presented no evidence in the record to support his argument that admission of this evidence had no strategic purpose. The district court dismissed the claim for lack of evidence of either deficient performance or prejudice.

At Meister's second trial, counsel introduced a picture of the contents of Meister's wallet. On cross-examination, the prosecutor asked two questions regarding a missing piece of paper from the picture that had someone's number on it.[9] Meister contends counsel was ineffective for introducing the picture and not following up with evidence that the number was a pager number

---

[9] In Meister's confession, he stated that J.L., who asked Meister to kill the victim, had given him a phone number, which he put in his wallet. A number was later found in his wallet which turned out to be J.L.'s pager number.

that was not active until after the date of the murder. What evidence should be introduced at trial is a tactical decision. *Bagshaw*, 142 Idaho at 38, 121 P.3d at 969. When faced with a tactical decision, this Court utilizes the strong presumption that the decision fell within the acceptable range of choices available to trial counsel. *Yakovac*, 145 Idaho at 447, 180 P.3d at 486.

In his first trial, trial counsel elicited testimony regarding the pager number; however, the record reflects that in the second trial neither counsel nor the State highlighted this evidence. The only reference to the pager number occurred when the prosecutor asked two questions regarding the number. There were no follow-up questions nor was the number brought up again at any other point in the trial or closing. Further, trial counsel objected to the questioning, which was overruled.

Meister has provided no evidence which suggests that counsel's decisions resulted from inadequate preparation, ignorance of the law, or other shortcomings.[10] Mention of the evidence of the pager number was brief, and was not highlighted by either party during the four-week trial. It was not unreasonable for counsel to decline to highlight the pager number as the State asked two questions regarding it and moved forward with its questioning. Therefore, the presumption that counsel's performance fell within the acceptable range of competent assistance leads us to conclude that failing to introduce evidence regarding the pager number's date of activation did not fall below an objective standard of reasonableness. Further, Meister ignores the fact that trial counsel objected to questioning regarding the pager number, which was sustained. Additionally, Meister provides no evidence that the outcome of the trial would have been different if this additional piece of evidence were introduced at trial. Therefore, Meister has not shown the district court erred in summarily dismissing this claim.

Meister next argues that his counsel was ineffective for introducing improper character evidence that Meister had a perverted sense of humor. Meister relies solely on one case out of the district court of Oregon, containing various errors committed by trial counsel which led to prejudice. *Sager v. Maass*, 907 F. Supp. 1412 (D. Oregon 1995). In *Sager*, trial counsel introduced an entire victim impact statement as a handwriting sample and to impeach the witness. *Id.* at 1419. The district court held that due to the overwhelmingly prejudicial effect of

---

[10] Moreover, even if this conduct fell below a reasonable standard, Meister has not shown there is a reasonable probability that without this alleged error, the outcome of the trial would have been different because of the overwhelming evidence of guilt.

the statement, neither reason justified the introduction. *Id.* The court noted that trial counsel "should have known that evidence of a crime's effect on the victim is generally not admissible during the guilt phase of a trial." *Id.* at 1420. Meister likens the introduction of an allegation that Meister had a "perverted sense of humor" to the introduction of an entire victim impact statement. The two are vastly different.

Based on the testimony provided by D.S. in the first trial, trial counsel moved in limine to exclude irrelevant and prejudicial character evidence regarding Meister's sense of humor in the second trial, which the prosecutor agreed to. Despite the prosecutor's agreement to limit questioning regarding Meister's sense of humor, trial counsel mentioned Meister's "sick sense of humor" when refreshing an officer witness's testimony regarding a telephone interview with D.S. Meister argues this constituted ineffective assistance of counsel. However, Meister takes the evidence out of context, omitting the second part of the examination.

Trial counsel read directly from the memorandum composed by the officer shortly after the interview:

> . . . I want to read you some lines from your report, and I want you to follow along with me and make sure I read them correctly, okay?
> So let's start with the part that refers to [D.S.] where it says on 3/17/2003, okay, sir?
> . . . .
> I'm going to read that sentence. . . .
> . . . .
> Okay now skip down three paragraphs to where it says, [D.S.] told me Meister had . . . Are we on the same spot?
> . . . .
> . . . [D.S.] told me Meister had a sick sense of humor.
> . . . .
> . . . [D.S.] told me Meister had a, quote, sick sense of humor, unquote, and would talk and laugh about things that were gory, bloody or inappropriate to a conversation.

Trial counsel then directed the officer to the next paragraph which went on to explain that D.S. told the officer that Meister did not have a need for money or any reason to want to kill the victim. Counsel then questioned the officer as to whether D.S. relayed any information regarding Meister wearing dark clothes on the evening of the murder or stating that he had "dirty business to attend to," to which the officer responded in the negative. Trial counsel then questioned the officer regarding another conversation with D.S., asking the same questions as to whether D.S. mentioned the dark clothing or dirty business. Again, the officer stated D.S. had

36

not mentioned either of these details or any incriminating statements about Meister. Trial counsel then went on to question the officer about a conversation with L.T.

Based on the entirety of the conversation and taken in context, the record reflects that counsel's questioning was not inappropriate. D.S. had earlier testified regarding Meister's statements implicating him in some "dirty business." In addition, D.S. had stated that Meister had been wearing dark clothes and that he often did mischievous things. Trial counsel's examination called into question D.S.'s earlier testimony. In addition, by pointing to Meister's sense of humor and the statements that he was "involved in something dirty" could have been an attempt by counsel to depict Meister's statement as not being serious but as being humorous. As a whole, counsel's performance did not fall below an objective level or reasonableness.

Moreover, opinion evidence that a person has a "sick sense" of humor cannot be characterized as having the same prejudicial impact as an entire victim impact statement as Meister suggests. The effect of a victim impact statement is so highly prejudicial that it most rarely is admitted. Further, Meister conclusively argues that this statement "served no defense strategy, nor pertained to the credibility of [anyone], and served no tactical purpose." Meister argues that the only reason counsel used the prejudicial statement was to orient the officer; however, looking at the questioning as a whole, it appears trial counsel made tactical decisions in his examination of the officer. While potentially not the most strategic decision, Meister has failed to demonstrate that counsel was objectively unreasonable. Moreover, Meister ignores the context which potentially suggests that trial counsel was attempting to discredit D.S.'s explanation for his failure to disclose the statement allegedly made by Meister. In addition, Meister has provided no evidence to demonstrate a reasonable probability that without the introduction of the statement, the result of the trial would have been different. Accordingly, Meister has not shown that the district court erred in summarily dismissing this claim.

## B.     Limiting Dr. O.'s Testimony

Meister next argues the district court erred by dismissing his claim that his constitutional right to due process was violated by limiting Dr. O.'s testimony. The district court dismissed Meister's claim regarding the limits set on his defense expert's testimony regarding Meister's confession because it had been previously raised and considered on appeal. Meister solely argues that the district court erred in dismissing this claim because the district court did not address the merits of the claim on direct appeal, but rather concluded any error, if there was one,

was harmless. Meister argues he has a due process entitlement to a re-evaluation of the prejudice resulting from the limitation of Dr. O.'s testimony. However, he presents no authority to support this assertion.

An issue previously raised and considered on appeal need not be considered in a petition for post-conviction relief. I.C. § 19-4901(a)(4); *Paradis v. State*, 110 Idaho 534, 537, 716 P.2d 1306, 1309 (1986). At Meister's second trial, Meister filed a motion to suppress his confession, arguing it was coerced. *Meister*, Docket No. 39807. After a hearing in which Dr. O. provided expert testimony regarding the coercive nature of certain interrogation techniques, the district court ruled the confession was not coerced and denied Meister's motion to suppress. The State then filed a motion in limine to preclude Dr. O.'s testimony, arguing that based on the district court's ruling, any testimony would be irrelevant. The district court ruled that Dr. O. would be permitted to offer testimony regarding false confessions in general; however, the district court's previous ruling on the voluntariness of Meister's confession would stand. The court also ruled that Dr. O. could not testify regarding the voluntariness of Meister's confession. Finally, the district court ruled Dr. O.'s testimony would be limited because he would not be permitted to offer an opinion regarding the truth or falsity of Meister's confession.

At Meister's second trial, Dr. O. testified regarding false confessions in general, including his theories on how certain interrogation tactics can result in an innocent person's confession to a crime. The State questioned Dr. O. about the percentage of cases he reviewed that resulted in a false confession. Meister then requested that Dr. O. testify regarding the application of his theories regarding false confessions to circumstances surrounding Meister's confession, arguing the State's questioning opened the door. The district court denied the request.

During closing argument, trial counsel discussed the circumstances surrounding Meister's interrogation and stated, based on Dr. O.'s testimony, the circumstances were such in which false confessions occur. After being found guilty of first degree murder and conspiracy to commit first degree murder, Meister appealed his conviction strictly arguing that the district court erred in limiting Dr. O.'s testimony. We concluded that if there was error, it was harmless beyond a reasonable doubt. The determination that any error is harmless necessarily addresses whether any alleged error was prejudicial and therefore precludes resurrection of the issue in a petition for post-conviction relief. *Hall v. State*, 126 Idaho 449, 452, 885 P.2d 1165, 1168 (Ct. App.

38

1994).  Meister provides nothing further to show how the district court abused its discretion by limiting the testimony of Dr. O.  Accordingly, Meister has failed to demonstrate the district court erred in summarily dismissing the claim.

## C.      Insufficiently Insulated Jury Room

Next, Meister contends the district court erred in dismissing his claim related to the insulation of the jury room because he provided sufficient evidence in the form of his factual claims, an affidavit, and a matter on the record of the criminal trial.  The State argues the district court did not err in ruling there was insufficient evidence to support this claim.  The district court dismissed Meister's claim alleging an insufficiently insulated jury room for lack of supporting evidence.  The district court further stated that summary judgment was granted for the reasons set forth in the State's motion.  In the State's motion for summary dismissal, the State argued that the claim was bare and conclusory and unsupported with sufficient evidence to substantiate the claims and that this issue should have been raised on direct appeal pursuant to I.C. § 19-4901(b).

> Idaho Code § 19-4901(b) provides:
>
> Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition or otherwise, that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

In response to the State's procedural bar argument, Meister argues this claim presents an exception to the general rule.  On appeal, Meister's response to the district court's conclusion that this claim is procedurally barred is parenthetically presented.  The case referenced by Meister, *Coleman*, 501 U.S. at 750, involved a state prisoner who defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule.  The Court held that federal habeas corpus review of the claims was barred unless the petitioner could demonstrate cause for default and actual prejudice or demonstrate that failure to consider the claim would result in a "fundamental miscarriage of justice."  *Id.*  First, Meister provides no argument addressing the applicability of this federal case to the case at hand.  Second, Meister provides no argument regarding the cause for his default in failing to raise this issue on direct appeal. Meister likewise fails to provide argument regarding the prejudice he suffered as a result.

Accordingly, Meister has failed to demonstrate the district court erred in summarily dismissing his claim regarding the insulation of the jury room.

**D.      Cumulative Error**

Meister next contends the cumulative effect of the errors at the second trial warrant relief on his ineffective assistance claim. While this Court has recognized the doctrine of cumulative error, *State v. Larsen*, 123 Idaho 456, 459, 849 P.2d 129, 132 (Ct. App. 1993) and *State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct. App. 1983), a necessary predicate to the application of the doctrine is a finding of error in the first instance. *State v. Blackstead*, 126 Idaho 14, 23, 878 P.2d 188, 197 (Ct. App. 1994); *Reynolds v.* State, 126 Idaho 24, 32, 878 P.2d 198, 206 (Ct. App. 1994). Having determined the district court correctly held the alleged errors at Meister's second trial did not violate due process or constitute deficient performance, we conclude Meister has failed to make the necessary showing of multiple errors as we have determined the district court properly granted summary dismissal on all of Meister's claims pursued in this appeal. Therefore, the doctrine of cumulative error has no applicability in this case.

**E.      Denial of Discovery Material**

Last, Meister argues discovery of certain material was necessary to protect a substantial right, and the district court erred in denying his motion. The State argues that Meister's naked claims of relevance are insufficient to show the trial court abused its discretion. The district court ruled the discovery requests were overly broad and nothing requested would have led to evidence which would protect one of Meister's substantial rights.

When a petitioner believes discovery is necessary for acquisition of evidence to support a claim for post-conviction relief, the petitioner must obtain authorization from the district court to conduct discovery. I.C.R. 57(b); *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (2001). Discovery in a post-conviction action is not required unless necessary to protect a petitioner's substantial rights. *Murphy v. State*, 143 Idaho 139, 148, 139 P.3d 741, 750 (Ct. App. 2006); *Griffith v. State*, 121 Idaho 371, 375, 825 P.2d 94, 98 (Ct. App. 1992). Discovery may be denied where the petitioner's claims are nothing more than speculation, unsupported by any evidence. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. Indeed, discovery may not be used to engage in fishing expeditions, as post-conviction actions provide a forum for known grievances, not an opportunity to search for them. *Murphy*, 143 Idaho at 148, 139 P.3d at 750.

40

Whether to authorize discovery is a matter directed to the discretion of the court. *Raudebaugh*, 135 Idaho at 605, 21 P.3d at 927. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

On appeal, Meister challenges the district court's denial of discovery relating to appellate counsel's decisions made in pursuing Meister's second direct appeal; testimony from various witnesses which would have contradicted Meister's confession, including testimony that Meister would kill someone for money, that no police were in the vicinity of the murder at the time Meister claimed to have heard a police siren, and that no clothes were found in the field which Meister supposedly left his clothes in; statements regarding T.H.'s and J.L.'s relationship; evidence that the pager number found in Meister's wallet was not active at the time of the murder; a statement regarding L.T.'s confession to the murder; and information regarding the sufficiency of the insulation of the jury room. Meister's motion for discovery cited and incorporated Sections III(A)(4)-(5), (B)(4)-(5), (C)(3)-(4), and (E)(3)-(4) of his response to State's motion for summary disposition of the amended petition to identify the material sought and their necessity. In the incorporated sections, Meister stated that the majority of the information sought was contained in exhibits attached to the response and requested the court take judicial notice of those exhibits or, in the alternative, permit him an opportunity for discovery to obtain the information.[11]

The district court ruled the discovery requests were overly broad and would not lead to evidence which would protect a substantial right of Meister, and therefore the requests were essentially a fishing expedition. A review of the record leads us to conclude that the district court did not abuse its discretion in denying Meister's motion. We note that the district court found Meister had extensive information, including the transcripts and filings from both the first and second trials. Additionally, he employed an investigator to investigate his claims. Furthermore, as stated by Meister in the incorporated section of his request for discovery,

---

[11] We note the record contains no exhibits attached to Meister's response to State's motion for summary dismissal. However, a review of the record reflects that the information sought by Meister was already in his possession.

Meister possessed the majority of the information he sought. Therefore, to the extent that the information sought was already in Meister's possession, we conclude that discovery was not necessary to protect a substantial right. Regarding the jury room, Meister alleged that the information material to his claim was forensic evidence demonstrating the room was not insulated, trial counsel's knowledge of this lack of insulation, reasons for failing to take action, and former jurors' personal experience of overhearing proceedings from the jury room. Based on Meister's petition for post-conviction relief and his declaration in support thereof, the record reflects that the information he requested was already in his possession, and therefore discovery was not necessary.

The only information Meister did not possess at the time he sought discovery included the information regarding appellate counsel's reasoning behind his choices during the second appeal. Meister's justification for needing such information is to determine whether counsel's performance was a product of sufficient review of the case and professional judgment. We agree that such broad requests amount to a fishing expedition.

Ultimately, Meister has failed to demonstrate that discovery of the vast amount of information sought was necessary to protect a substantial right. Thus, the record reflects that the district court did not abuse its discretion. It recognized the issue as discretionary, acted within the bounds of its discretion, consistent with applicable legal standards, and exercised reason to reach its decision. Accordingly, Meister has failed to demonstrate the district court erred in summarily dismissing this claim.

## III.
### CONCLUSION

The district court did not err in summarily dismissing Meister's claims of ineffective assistance of both trial and appellate counsel. Additionally, the district court did not err in dismissing Meister's claims regarding the limitation of Dr. O.'s testimony, insulation of the jury room, cumulative error, and denial of his discovery request. Therefore, the district court's order summarily dismissing Meister's petition for post-conviction relief is affirmed.

Chief Judge GRATTON and Judge Pro Tem MELANSON **CONCUR**.